ACCEPTED
01-15-00254-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/27/2015 7:45:02 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00254-CV

IN THE

FIRST COURT OF APPEALS

Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/27/2015 7:45:02 PM
CHRISTOPHER A. PRINE
Clerk

---

ELIZABETH A. LOUSTEAU AND BRETT CLANTON

Defendants/Appellants,

v.

JAIME L. NORIEGA AND SONIA A. NORIEGA

Plaintiffs/Appellees.

---

Appeal from the 151st Judicial District Court
Harris County, Texas
No. 2013-35448-B

---

APPELLANTS' BRIEF

---

Marianne G. Robak, TBA 24048508
email: mgrobak@law-crg.com
1770 St. James Place, Suite 150
CERSONSKY, ROSEN & GARCIA, P.C.
Houston, Texas 77056
Tel: (713) 600-8500; FAX (713) 600-8585
ATTORNEYS FOR APPELLANTS,
ELIZABETH A. LOUSTEAU AND BRETT
CLANTON

No. 01-15-00254-CV

IN THE

FIRST COURT OF APPEALS

Houston, Texas

---

ELIZABETH A. LOUSTEAU AND BRETT CLANTON

Defendants/Appellants,

v.

JAIME L. NORIEGA AND SONIA A. NORIEGA

Plaintiffs/Appellees.

---

Appeal from the 151st Judicial District Court
Harris County, Texas
No. 2013-35448-B

---

APPELLANTS' BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

COME NOW, Appellants Elizabeth A. Lousteau and Brett Clanton, and file this, their brief pursuant to Texas Rule of Appellate Procedure 38, and respectfully request that the judgment of the trial court be reversed and that this Court render a judgment in accordance with the jury's findings.

# IDENTITY OF PARTIES AND COUNSEL

Elizabeth A. Lousteau and Brett Clanton., Defendants/Appellants:

CERSONSKY, ROSEN & GARCIA, P.C.
Marianne G. Robak, TBA 24048508
email: mgrobak@law-crg.com
1770 St. James Place, Suite 150
Houston, Texas 77056
Tel: (713) 600-8500; FAX (713) 600-8585

Counsel for Appellants

Jaime L. Noriega And Sonia A. Noriega, Plaintiffs/Appellees:

Swanson Law Firm, PLLC
Sarahjane "SJ" Davidson Swanson, TBA 24036441
email:  sjswanson@swansonpllc.com
310 Main, Ste. 201
Houston, Texas 77056
Tel:(713) 881-9742; FAX: (713) 583-2444

Counsel for Appellees

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL………………………………….……..iii

TABLE OF CONTENTS……………………………………………………….…iv

TABLES OF AUTHORITIES………………………………………………...vii

I.  STATEMENT OF THE CASE………………………………………..1

II.  STATEMENT REGARDING ORAL ARGUMENT………………………3

III.  ISSUES PRESENTED…………………………………………………3

IV.  STATEMENT OF FACTS…………………………………………….4

V.  SUMMARY OF ARGUMENT………………………………………...20

VI.  ARGUMENT…………………………………………………………29

    A.  The trial court erred in disregarding the jury's finding on a fact issue
………………………………………………………………………29

    B.  The trial court erred by finding that abandonment was NOT tried by consent...................................................................................32

        i.  Standard of Review.................................................................32

        ii.  The trial court abused its discretion.......................................32

        iii.  The abandonment issue was apparent on the face of Appellees' live pleading at the time of trial, therefore it could not have been waived by Appellants......................................................33

        iv.  The abandonment issue was also on the Appellants' live pleading at time of trial...........................................................35

        v.  Whether Appellees abandoned their alleged homestead was tried by consent................................................................36

        vii.  Both parties presented evidence on abandonment and it was understood to be contested.................................................39

            a.  Appellees opened the door in their Opening Statement..................................................................40

            b.  Appellees testified repeatedly about their 'intent to return' in trial...................................................................42

c.     Evidence regarding 'temporary leasing' shows that whether the alleged homestead status of 314 Goldenrod was abandoned was at issue............................................47

     1.     Evidence was presented regarding the rental agreements..........................................................49

     2.     The jury was instructed on how a temporary rental effects a homestead designation......................................................50

d.     Appellees did not preserve error by either objecting to the evidence, objecting to the jury charge, or objection to the jury findings regarding whether 314 was Appellees' homestead in 2014, therefore, the objections were waived...........................................52

     1.     Appellees had no objection to the testimony…...53

     2.     Appellees had no objections to the Jury Charge..................................................................54

     3.     There were no objections to the Jury's finding in Question 2..............................................................56

C.     The trial court erred in disregarding the jury's finding on question number 2, as it was material.............................................................57

     i.     Standard of Review......................................................57

     ii.     The record shows that the jury's finding was material, thus the trial court erred in disregarding jury's finding to question number immaterial................................................................58

     a.     The pleadings and the evidence at trial supported the findings in Question 2...................................................62

D.     The trial court erred in submitting Question 1 to the Jury..............................................................................64

     i.     Standard of Review......................................................64

     ii.     Question 1 was not a controlling question..............................65

     iii.     The homestead status of 314 Goldenrod in 1994 was not in dispute........................................................................67

     iv.     The trial court's submission of Question 1 to the jury caused

the rendition of an improper judgment...................................68

E.  The trial court erred by not issuing a final judgment.........................69

  i.  Standard of Review.................................................................69

  ii.  The trial court erred by not issuing a final judgment after the merits of the case had been tried to a jury and the jury rendered a verdict...................................................................69

    a.  Wrongful writ of execution was waived by Appellees......................................................................70

    b.  The trial court's actions have created piecemeal trial, which is prohibited...........................................71

F.  The trial court erred by severing the wrongful execution claim from the Judgment after trial......................................................73

G.  The trial court erred when it awarded damages to Appellees.............74

H.  Conclusion.............................................................................77

VII.  Prayer.....................................................................................80

CERTIFICATE OF COMPLIANCE ..............................................................82

APPENDIX ...............................................................................83

# TABLE OF AUTHORITIES

## Cases

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ................................................................................59

*Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.,* 260 S.W.3d 529, 534 (Tex. App.-Tyler 2008, pet. denied) ..................................................................57

*Aero Energy, Inc. v. Circle Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985) .........53

*Allied Mgmt. Corp. v. Houston Poly Bag, Inc.*, 01-88-00643-CV, 1989 WL 66200, at *3-4 (Tex. App.—Houston [1st Dist.] June 8, 1989, no writ)..........................60

*Armstrong v. Hix,* 107 Tex. 194, 175 S. W. 430...................................................30

*BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990) ......................75

*Billy Smith Enterprises, Inc. v. Hutchison Const., Inc.*, 261 S.W.3d 370, 377-78 (Tex. App.—Austin 2008, pet. dism'd) ..............................................................59

*Blum v. Rogers,* 78 Tex. 530, 15 S.W. 115, 117 (1890)........................................47

*Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 515 (Tex. 1998).. 21, 28

*Brown,* 78 B.R. 486, 487 (Bankr. N.D. Tex 1987)................................................47

*C & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966)..................57

*Cambio v. Briers*, 01-10-00807-CV, 2015 WL 2229274, at *3 (Tex. App.— Houston [1st Dist.] May 12, 2015, no. pet. h.) ...................................................59

*Carr v. Jaffe Aircraft Corporation,* 884 S.W.2d 797, 799 (Tex.App.—San Antonio 1994, no writ)................................................................................... 29, 30

*Carver v. Gray,* 140 S.W.2d 227, 231 (Tex. Civ. App. —Amarillo 1940, writ dism'd judgmt. cor.) ................................................................. 23, 40, 48

*Cecil v. Smith*, 804 S.W.2d 227, 231 (Tex. Civ. App – Amarillo 1940, writ dism'd judgmt. cor.)....................................................................................................55

*Cherokee Water Co. v. Freeman,* 145 S.W.3d 809, 813 (Tex. App.—Texarkana 2004, pet. denied)..............................................................................................62

*City of Brownsville v. Alvarado,* 897 S.W.2d 750, 752 (Tex. 1995).......................58

*Clark & Loftus v. Pearce,* 80 Tex. 146, 15 S. W. 787............................................30

*Clark v. Trailways, Inc.*, 774 S.W.2d, 644, 647 (Tex.1989) .................................52

*Cole v. Crawford,* 69 Tex. 124, 5 S.W. 646, 648 (1887).........................................63

*Coombs v. Fazzio*, 386 S.W.2d 650, 653 (Tex. Civ. App.—San Antonio 1965), *writ refused NRE* (Apr. 28, 1965) ..............................................................................60

*Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619 (Tex.Civ.App.— Beaumont 1978, writ ref'd n.r.e.)........................................................................64

*Dodd v. Harper,* 670 S.W.2d 646, 649 (Tex. App. – Houston [1st Dist.] 1983, no writ)..................................................................................................22

*Drake Interiors, L.L.C., v. Thomas,* 433 S.W.3d 841, 847-48 (Tex.App. - Houston [14th Dist.] 2014, no pet.)..............................................................47

*Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 465 (Tex. App - Waco, 1981, writ dism'd)............................................................................ 23, 40, 45

*Farrington V. First Nat'l Bank of Bellville,* 753 S.W.2d 248, 251 (Tex. App. – Houston [1st Dist.] 1988, writ denied) ................................................23

*Gann v. Montgomery,* 210 S.W.2d 255, 257–58 (Tex. Civ. App.—Fort Worth 1948, writ ref'd n.r.e.......................................................................22

*Gardner v. Douglass,* 64 Tex. 76 (1885).....................................................26

*Gomez v. Franco,* 677 S.W.2d 231, 234 (Tex.App.—Corpus Christi 1984, no writ) .......................................................................................................65

*Green v. Watson,* 860 S.W.2d 238, 244 (Tex. App. – Austin 1993, no writ) .........73

*Gulf, C. & S.F. Ry. Co. v. Canty,* 285 S.W. 296, 299 (Comm'n App. 1926) ..........30

*Highlands Ins. Co. v. Baugh,* 605 S.W.2d 314, 319 (Tex. Civ. App.—Eastland 1980, no writ)................................................................................28

*Hollifield v. Hilton,* 515 S.W.2d 717, 721 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.)..........................................................................................47

*Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)................................56

*Hume v. Schintz,* 90 Tex. 72, 36 S. W. 429 ................................................30

*Iley v. Hughes,* 311 S.W.2d 648, 651 (1958)................................................71

*In re Columbia Medical Center of Las Colinas,* 290 S.W.3d 204, 213 (Tex. 2009) ..........................................................................................29

*In re Educap, Inc.,* 01-12-00546-CV, 2012 WL 3224110, at *3 (Tex. App.—Houston [1st Dist.] Aug. 7, 2012, no pet.).........................................68

*In re Norris,* 421 B.R. 782, 790 (S.D.Tex. 2009)............................. 23, 48

*Inman v. Orndorff,* 596 S.W.2d 236, 238 (Tex. Civ. App. – Houston [1st Dist.] 1980, no writ)................................................................................73

*Johnson v. Whitehurst,* 952 S.W.2d 441, 449 (Tex.App. - Houston [1st Dist.], writ ref;d n.r.e.)..........................................................................66

*Ked-Wick Corp. v. Levinton,* 681 S.W.2d 851, 855 (Tex. App. – Houston [14th Dist.] 1984, no writ)....................................................................63

*Komet v. Graves,* 40 S.W.3d 596, 602 (Tex.App. -- San Antonio 2001, no pet.)...33

*Land Title Co. of Dallas, Inc. v. F.M.Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex. 1980) ..............................................................................................32

*Lee v. Lee*, 411 S.W.3d 95, 106-07 (Tex. App. -- [1st Dist.] 2013, no pet.) .... 37, 38

*Lewkowicz v. El Paso Apparel Corp.,* 625 S.W.2d 301, 303 (Tex.1981) ...............34

*Lloyd v. Brinck,* 35 Tex. 1 ...................................................................................30

*Lone Star Gas Co. v. Railroad Commission of Texas,* 767 S.W.2d 709, 710
    (Tex.1989)........................................................................................................76

*Long Bell Lumber Co. V. Miller*, 240 S.W.2d 405, 406 (Tex. Civ. App. – Amarillo
    1951, no writ)........................................................................................... 23, 47

*McMillan v. Warner* 38 Tex. 410, 411 (Tex.1873) ............................ 23, 26, 40, 45

*Moore v. Kitsmiller*, 201 S.W.3d 147, 153 (Tex. App. – Tyler 206, pet. denied)...64

*Neller v. Kirschke,* 922 S.W.2d 182, 187 (Tex. App. – Houston [1st Dist.] 1995,
    writ denied) .....................................................................................................55

*NRG Exploration, Inc. v. Rauch,* 671 S.W.2d 649, 653 (Tex.App.—Austin, 1984,
    writ ref'd n.r.e.) ..............................................................................................76

*Panhandle & Santa Fe Ry. Co. v. Friend*, 91 S.W.2d 922 no wr., (1936)..............54

*Park v. Escalera Ranch Owners' Ass'n, Inc.*, 2015 WL 737424, at 17, - S.W.3d –
    (Tex. App. – Austin Feb. 13, 2015, no pet. h.).................................................33

*Perry v. Dearing,* 345 F.3d 303, 318 (5th Cir. 2003)................................................47

*Phillips v. Phillips,* 820 S.W.2d 785 (Tex.1991)....................................... 32, 33, 34

*Pierce v. Wash. Mut. Bank,* 226 S.W.3d 711, 714 (Tex. App.-Tyler 2007, pet.
    denied).............................................................................................................57

*Prize Energy Res., L.P. v. Cliff Hoskins, Inc.,* 345 S.W.3d 537, 567 (Tex. App. –
    San Antonio 2011, no pet.) .............................................................................38

*Prudential Corp. v. Bazaman*, 512 S.W.2d 85, 91 (Tex. Civ. App. – Corpus Christi
    1974, no writ)..................................................................................................73

*Railway Co. v. McArthur,* 96 Tex. 65, 70 S. W. 317................................................30

*Railway Co. v. Muse,* 109 Tex. 352, 207 S. W. 897, 4 A. L. R. 613........................30

*Railway Co. v. Strycharski,* 92 Tex. 1, 37 S. W. 415 .............................................30

*Ramos v. FritoLay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990) ....................................70

*Raney v. White,* 267 S.W.2d 199, 200 (Tex. Civ. App. – San Antonio 1954, writ
    ref'd) ...............................................................................................................32

*Roling v. Alamo Group (USA), Inc.,* 840 S.W.2d 107, 110 (Tex.App.-Eastland
    1992, writ denied) ..........................................................................................55

*Rosales v. Williams,* 2010 WL 457536, at 6 (Tex.App.-Houston [1st Dist.] 2001,
    no pet.) ...................................................................................................... 33, 34

*RR Maloan Investments, Inc. v. New HGE, Inc.,* 428 S.W.3d 355, 362 (Tex.App.—
    Houston [14th Dist.] 2014), *reh'g overruled* (May 1, 2014) .......................... 33, 34

*Salinas v. Rafati,* 948 S.W.2d 286, 288 (Tex. 1997) ...............................................56

*Saloman v. Lesay,* 369 S.W.3d 540, 550 (Tex.App.--Houston [1st Dist.] 2012, no pet.) ...........................................................................................22

*Sanchez v. Telles,* 960 S.W.2d 762, 769 (Tex. App. 1997); *West v. Austin Nat'l Bank,* 427 S.W.2d 906, 911–12 (Tex.Civ.App.-San Antonio 1968, writ ref'd n.r.e.) ...........................................................................................26

*Sears, Roebuck & Co. v. Kunze,* 996 S.W.2d 416, 423 (Tex.App.-Beaumont 1999, writ denied) ..........................................................................55

*Shamoun v. Shough,* 377 S.W.3d 63, 69 (Tex.App.-Dallas 2012, pet. denied).......62

*Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933, 937 (Tex.1992)........................... 33, 34

*Shupe,* 192 S.W.3d at 579 ...............................................................................64

*Silvio v. Boggan,* 01-10-00081-CV, 2012 WL 524420, at *3-4 (Tex. App.—Houston [1st Dist.] Feb. 16, 2012, pet. denied) ................................59

*Simank v. Alford,* 441 S.W.2d 234, 237 (Tex.App.-Austin 1969, writ ref'd n.r.e)..26

*Sinko v. City of San Antonio,* 702 S.W.2d 201, 208 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) ...........................................................................64

*Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991)70

*Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994). 53, 57, 58

*Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex. App. – Houston [1st Dist.] 1993, writ denied ...............................................................................................38

*Strauss v. La Mark,* 366 S.W.2d 555, 557 (Tex. 1963) ...........................................70

*Tall Timbers Corp. v. Anderson,* 370 S.W.2d 214 (Tex.Civ.App.1963), rev'd on other grounds, 378 S.W.2d 16 (Tex.1964) ...........................................76

*Texas Building & Mortgage Co. v. Morris,* 123 S.W.2d 365, 371 (Tex.Civ.App.1938) ........................................................................... 47, 48

*Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 30, n. 29. (Tex. 1994)............71

*Traywick v. Goodrich,* 364 S.W.2d 190, 191 (Tex. 1963) .....................................30

*Trinity Indus., Inc. v. Ashland, Inc.,* 53 S.W.3d 852, 863 (Tex. App.—Austin 2001, pet. denied)....................................................................................62

*Tucker v. Graham Green v. Watson,* 860 S.W.2d 238, 244 (Tex. App. – Austin 1993, no writ)........................................................................................74

*Uvalde Rock Asphalt Co. v. Warren,* 127 Tex. 137, 91 S.W.2d 321, 324 (1936)...47

*Wal–Mart Stores, Inc. v. Seale,* 904 S.W.2d 718, 722 (Tex.App.-San Antonio 1995, no writ)........................................................................................29

*Wang v. Gonzalez,* 2013 WL 174576, at 8 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013, no pet.) ................................................................... 61, 62

*West v. Austin National Bank* (San Antonio Tex.Civ.App.1968)............... 23, 40, 45

*Whiteman v. Burkey,* 282 S.W. 788 (Tex.1926) .....................................................22

*Yates v. Home Building & Loan Co.*, 103 S.W.2d 1081, 1085 (Tex. Civ. App. 1937) ...............................................................................................47

**Statutes**

TEX. CIV. PRAC & REM. CODE ANN. § 37.002 (Vernon 2008) ......................................... 74
TEX. CIV. PRAC & REM. CODE ANN. § 37.003(a) (Vernon 2008) .................................... 75
Tex. Const. art. I, § 15, art. V, § 10 ................................................................................. 29
Tex. Prop. Code § 41.005(c) .......................................................................................... 22
TEX. R. CIV. P. 274. ...............................................................................................53, 55
TEX. R. CIV. P. 279 ....................................................................................................... 70
Tex. R. Civ. P. 295 ........................................................................................................ 55
Tex. R. Civ. P. 300 ...................................................................................................29, 74
TEX. R. CIV. P. 41 .....................................................................................................18, 73
TEX. R. CIV. P.277, 278 ................................................................................................. 64
Tex. R. Evid. 103(a)(1) .................................................................................................. 51
TEX.R. CIV. P. 67 ......................................................................................................31, 35
TEX.R.APP.P. 43.2(c) .................................................................................................... 79
TEX.R.APP.P. 43.4. ....................................................................................................... 79
TEX.R.CIV.P. 277 and 279 ............................................................................................. 64
TEX.R.CIV.P. 278 .......................................................................................................... 64
Texas Civil Practice and Remedies Code § 34.022......................................................... 75
Texas Rule of Civil Procedure 94 .................................................................................. 32

## I. STATEMENT OF THE CASE

Pursuant to Texas Rule of Appellate Procedure, 38.2(d), Appellants offer the following statement:

| | |
|---|---|
| March 17, 2014 | Plaintiff, Jaime L. Noriega and Sonia A. Noriega file the Original Petition for Bill or Review and Application for Injunction. |
| April 11, 2014 | Injunction hearing held. |
| April 14, 2014 | Partial Temporary Injunction granted. On that same date, Appellees filed the First Amended Petition, Application for Injunctive Relief and Suit for Declaratory Relief. the trial is preferentially set for September 1, 2014. C.R. at 4; C.R. at 7. |
| April 15, 2014 | Defendants' Original Answer is filed that contained a general denial. |
| June 23, 2014 | Appellees filed Plaintiffs'1st Supplemental Petition To Plaintiffs' 1st Amended Petition For Bill Of Review And Suit For Declaratory Relief that added a cause of action for wrongful execution. C.R. at 18. |
| July 17, 2014 | Defendants' First Amended Answer is filed alleging various affirmative defenses, including abandonment. |
| July 21, 2014 | Defendants file their Second Amended Answer that included the above-mentioned affirmative defenses, as well as a specific denial regarding Appellees' right to attorney fees. S. C.R. at 3. |
| August 23, 2014 | Pleadings deadline passes. |
| August 24, 2014 | Appellees file a Motion to Strike the Amended Answers based on 'surprise.' The Motion alternatively requests a continuance of the trial. C.R. at 22. |
| August 28, 2014 | Appellants filed a Motion for Leave to Amend Pleading after the pleadings deadline has passed to remove all affirmative defenses. C.R. at 28. |
| September 10, 2014 | The court signs an order that only grants the Motion for |

| | |
|---|---|
| | Leave to Amend Pleading regarding the attorney "fee issue only." C.R. at 34. |
| November 6, 2014 | A two-day jury trial commences. |
| November 7, 2014 | The jury deliberates and renders verdict in favor of Appellants. C.R. at 56. |
| December 22, 2014 | The trial court issues an Interlocutory Judgment that disregarded the jury's' finding to Jury Question Number 2 and awards damages to Appellees to be delivered to Appellees within 30 days of the Interlocutory Judgment being signed. No supersedeas bond was set. The trial court indicates that, even though the claim for wrongful execution was not submitted to the jury, Appellees may still pursue the claim. C.R. at 65. |
| January 20, 2015 | Appellants filed an Emergency Motion to Delay Enforcement of Provision in Interlocutory Judgment or to Set a Supersedeas Bond for the Value of the Deed to 314 Goldenrod or to Permit Placement of the Deed into the Registry of the Court. C.R. at 68. |
| January 21, 2015 | Trial court permits placement of the deed into the Registry of the Court, but denies all other grounds of the emergency motion. No supersedeas bond is set. C.R. at 81. |
| January 21, 2015 | Appellants file a Motion to Modify. C.R. at 82. |
| February 13, 2015 | Trial court *sua sponte* consolidates the case with Cause No. 2013-35448; *Elizabeth A. Lousteau and Brett Clanton v. Jaime L. Noriega and Sonia A. Noriega* In the 151st Judicial District of Harris County, Texas ("the Underlying Lawsuit" or "the 2013 Lawsuit") Thereafter, *sua sponte*, severs the bill of review and declaratory judgment action from the wrongful execution case, making the bill of review and declaratory judgment final and appealable. The severed cause is now styled Cause No. 2013-35448-B; *Elizabeth A. Lousteau and Brett Clanton v. Jaime L. Noriega and Sonia A. Noriega* In the 151st Judicial District of Harris County, Texas. ("the Severed Lawsuit") No supersedeas bond is set. C.R. at 150. |
| February 27, 2015 | Hearing on Motion to Modify takes place without a Response having been filed by Appellees. The Motion is |

2

| | |
|---|---|
| | denied. |
| March 11, 2015 | Appellants object to the consolidation and severance. C.R. at 154. |
| March 16, 2015 | The Notice of Appeal is filed in both the 2013 Lawsuit and the Severed Lawsuit. C.R. at 158. |
| May 8, 2015 | Appellants file a Motion to Set Supersedeas Bond. C.R. 164. |
| June 2, 2015 | The trial court denies the motion for supersedeas bond. It appears the basis for the court's order is that the placing of the deed into the Registry of the Court is sufficient bond. S.C.R. at 15. |
| June 3, 2015 | Appellants file a Motion to Reconsider Order of June 2, 2015. |
| June 16, 2015 | The trial court denies Appellants' Motion to Reconsider stating that the deposit of the deed into the Registry of the Court provides Defendants relief from judgment and that no further supersedeas is ordered. S.C.R. at 16. |
| June 23, 2015 | Appellants file a Motion to Confirm Authority to Direct Rental Payments During Pendency of Appeal. S.C.R. at 18. |
| July 7, 2015 | The Motion to Confirm is denied. S.C.R. at 21. |

## II.      STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument.

## III.      ISSUES PRESENTED

**Issue Number 1:** Did the trial court abuse its discretion when it disregarded the jury's finding on a fact issue?

**Issue Number 2:** Did the trial court abuse its discretion by determining that the issue of 'whether Appellees abandoned their alleged homestead after they moved to Chicago, Illinois' was not tried by consent?

**Issue Number 3:** Was Jury Question 2 material because it went to the heart of the dispute regarding 'whether 314 Goldenrod was Appellees' homestead when the execution took place on March 4, 2014,' and because evidence was presented to the jury on it, without objection?

**Issue Number 4:** Whether the trial court abused its discretion by submitting Question 1 to the jury even though it was not supported by pleadings and was not controlling?

**Issue Number 5:** Whether the trial court abused its discretion when it issued an interlocutory judgment after trial when there had been no pre-trial severance or bifurcation of any claims before trial?

**Issue Number 6:** Whether the trial court abused its discretion when it awarded damages and/or specific performance in the Interlocutory Judgment when no cause of action supporting damages has been decided by the jury?

**Issue Number 7:** Whether the trial court erred in severing the wrongful execution claim from the judgment, post-trial?

## IV.     STATEMENT OF THE FACTS

### a.     Undisputed Facts Regarding the Underlying Lawsuit

4

The following facts are undisputed. At all relevant times, Appellants, Elizabeth Lousteau and Brett Clanton ("Appellants"), lived at 316 Goldenrod Street, Houston Texas 77009 ("316 Goldenrod"). See the Reporter's Record (hereinafter referred to as "R.R") at 105-16 and R.R. 3 at 109. Prior to March 4, 2014, the property next door, 314 Goldenrod Street, Houston Texas 77009 ("314 Goldenrod") was owned by Appellees, Jaime L. Noriega and Sonia A. Noriega ("Appellees"). However, the Appellees had not lived at 314 Goldenrod since 2006, when they moved to Chicago, Illinois. R.R. 2 at 92. On or about June 13, 3013, Appellants filed suit against Appellees seeking money damages for a nuisance and trespass. *See* page 8 of the *Corrected Clerk's Record* filed with the 1st Court of Appeals on June 10, 2015, which will hereinafter be referred to as "C.R."[1] Appellants alleged in their lawsuit that the roof of Appellees' garage structure trespassed onto Appellants' property, which caused damage from water runoff from the roof. The lawsuit filed by Appellants is styled Cause No. 2013-35448; *Elizabeth A. Lousteau and Brett Clanton v. Jaime L. Noriega and Sonia A. Noriega*

---

[1] Please note that there are two "original" clerk's records on file on this Appeal. The first clerk record filed was incorrect and was missing many crucial documents and contained numerous unnecessary documents. Therefore, the clerks filed a "corrected" clerk's record that was substantially correct on June 10, 2015. Some documents were still missing and the record needed supplementing to include some pleadings and rulings that were filed after the initial clerk's record had been requested, so the supplemental clerk's record was filed on August 26, 2015.

5

In the 151st Judicial District of Harris County, Texas. ("the Underlying Lawsuit" or "the 2013 Lawsuit"). C.R. at 8.

It is undisputed that neither Appellee answered the lawsuit. C.R. at 6 - 17. It is also undisputed that returns of service were filed with the trial court for alleged service on Appellees. C.R. at 9. It is also undisputed that motions for default were filed by Appellants against each Appellee. C.R. 10-11. After hearing on the motions, the motions were granted. C.R. at 10; C.R. at 6 - 17. In the orders, the trial court found that Appellees were served with process and failed to appear. C.R. at 12. The trial court entered into a judgment, in cause number 2013-35448, in favor of Appellants in the amount of $62,000.00 plus $3,368.76 in attorney fees. *Id.*

## b. Writ of Execution on the Default Judgment

It is undisputed that on November 19, 2013, Appellants filed a request for abstract of the default judgment. C.R. at 10. The abstract was issued by the District Clerk, as requested. *Id.* Appellants then filed for a writ of execution, which was issued on December 23, 2013. C.R. at 11. It is also undisputed that the execution sale took place on March 4, 2014 where Appellants purchased, pursuant to a Sheriff's Deed, 314 Goldenrod. *Id.*

## c. The 2014 Lawsuit

On March 17, 2014, less than two weeks after the sale of 314 Goldenrod took place, the Noriegas filed a lawsuit against Appellants styled Cause No. 2014-14152; *Jaime L. Noriega and Sonia A. Noriega v. Elizabeth A. Lousteau and Brett Clanton*; In the 151st Judicial District of Harris County, Texas. ("2014 Lawsuit"). The 2014 Lawsuit contained three claims: (1) a Bill of Review alleging that the Noriegas were not served with process; (2) a Declaratory Judgment, requesting that the trial court declare the Property to be the Noriegas' homestead, and (3) a cause of action for damages for wrongful execution. C.R. at 6-17 and C.R. at 18-21.

Plaintiffs' First Amended Petition for Bill of Review, Application for Injunctive Relief, and Suit for Declaratory Judgment ("Amended Petition"), which was filed on April 14, 2014, alleged that Appellees did not receive notice of the Underlying Lawsuit. C.R. at 7. Appellees filed the declaratory judgment action asking the trial court to "declare and enter judgment as to the Plaintiffs' claim of the subject property at 314 Goldenrod, Houston, Texas, as their homestead, thus exempt from seizure and execution." C.R. at 14. In that same Amended Petition, Appellants pled that "the Noriegas have never abandoned their homestead, conversely, they intend to return to Houston at some point and live in the home." C.R. at 15. Pleading further, Appellees stated that 314 Goldenrod "has always been used and claimed as their homestead, and they have never abandoned it as their homestead." *Id.* Thereafter, on June 23, 2014, Appellees filed Plaintiffs' 1st

7

Supplemental Petition to Plaintiffs' 1st Amended Petition for Bill of Review and Suit for Declaratory Relief ("First Supplemental Petition"). The First Supplemental Petition asserted a cause of action for wrongful writ of execution. C.R. at 18. In that pleading, Appellees prayed for actual damages "from Defendants' wrongful execution against Plaintiffs' homestead." C.R. at 21.

After receiving the amended and supplemental pleadings, and prior to the deadline to file pleadings had passed, Appellants filed their second amended answer alleging several affirmative defenses, including abandonment, a specific denial regarding attorney's fees, and a counterclaim for declaratory relief. *See* the Supplemental Clerk's Record filed on August 26, 2015 (hereinafter referred to as "S.C.R.") at 3. After the answer was filed, Appellees moved to strike Appellants' timely filed amended answer by claiming it was filed too close to the deadline to file amended pleadings. C.R. at 22-26. In that motion, Appellees also moved for a continuance of the trial. C.R. 22 - 26. In fact, the pleading deadline had not passed. However, the pleadings deadline had passed by the time Appellees Motion to Strike was filed. In an attempt to move the case to trial and due to the fact that the pleadings deadline had past at the point in time that the Motion to Strike had been filed, Appellants filed a motion for leave to amend their pleadings to remove the affirmative defenses and the counterclaim. C.R. at 28. In the Motion, Appellants stated: "While Defendants timely amended their pleadings to include well founded

8

affirmative defenses.....in the interest of an expeditious resolution of this matter, Defendants had elected to withdraw the affirmative defenses.....so this case can go to trial." *Id*. The trial court partially granted the motion "relating to the fee issue, only." C.R. at 34.

After extensive discovery was conducted on whether Appellees were served with process in the Underlying Lawsuit, Appellants agreed that the preponderance of the evidence showed that Appellees were not served with process. Therefore, prior to trial, Appellants stipulated to that issue. S.C.R. at 9. The trial court set aside the default judgment in the Underlying Lawsuit. C.R. at 66.

### d. The Jury Trial

The record shows that what remained to be tried was the declaratory judgment action regarding whether 314 Goldenrod is Appellees' homestead and the cause of action for wrongful writ of execution as set forth in the Amended Petition and the First Supplemental Petition. On November 7, 2014, the case was tried to a jury. C.R. at 56-64.

### i. Opening Statement

During Appellees' Opening Statement, the jury was told by Appellees that "The issue in contention, the moment you've all been waiting for, we're going to clarify what it is. The issue in contention, 314 Goldenrod in Houston Texas, *is* Jaime and Sonia Noriega's homestead. That's the issue." R.R. 2 at 6 (emphasis

9

added). Appellees then told the jury that the Appellees bought 314 Goldenrod in 1994. R.R. 2 at 9. Appellees never told the jury during opening statement the date they moved into 314 Goldenrod or that they lived there in 1994. R.R. 2 at 5 - 17. Instead, the jury was told that "they lived there in this home for quite awhile." R.R 2 at 9. The jury was then told that Appellees moved to Chicago, Illinois in 2006 and that they have leased 314 Goldenrod out "on a one-year basis multiple times to different tenants." R.R. 2 at 13.

During the Opening Statement, Appellees told the jury "at every moment in time and especially in 2006, that they intended to come back here to their home." R.R. 2 at 12. Counsel for Appellees told the jury that "they're actually going to make that move back in the next few years." R.R. 2 at 16. The jury was also instructed by counsel for Appellees "...that a homestead, once designated, remains a homestead until it is somehow -- it goes away" (R.R. 2 at 8). Nothing regarding the cause of action for wrongful execution action was mentioned in Opening Statement. R.R. 2 at 5 - 17.

### ii. Testimony of Dr. Noriega

During their case in chief, Appellee Dr. Jaime L. Noriega testified that he and his family currently live in Chicago, Illinois. R.R. 2 at 26. He also testified that he has lived in five different places since moving to Chicago in 2006. R.R. 2 at 32. While Dr. Noriega testified that they purchased 314 Goldenrod in December of

10

1994 (R.R. 2 at 36.), the record shows no testimony as to the date they moved in. Dr. Noriega testified that he would not have been legally able to file for a homestead tax exemption in 1994 because they "had not lived there for the amount of time that is necessary. We just bought it like the 30th of December." R.R. 2 at 59. Dr. Noriega then testified that while he did later obtain a homestead tax exemption for 314 Goldenrod, he removed it in 2006 "because it was clear that you could not claim tax exemption if you did not live there." R.R. 2 at 63.

Dr. Noriega was questioned, at length, by his counsel regarding his and his wife's intent to return to 314 Goldenrod at some point in the future. R.R 2 at 76-87. When asked what his plans were for the future concerning 314 Goldenrod, Dr. Noriega testified "It's always been our plan to return there to live there." R.R. 2 at 76. Dr. Noriega then listed off several factors that are in his alleged decision to return to 314 Goldenrod to live. R.R. 2 at 76-82.

During cross-examination, Dr. Noriega testified that his primary residence is in Chicago, Illinois, that his job is in Illinois, his family lives in Chicago, Illinois, he is registered to vote in Illinois, and he has an Illinois driver's license. R.R. 2 at 98-106. He then testified that he has no immediate plans to move back to Houston. R.R. 2 at 114. To this evidence, Appellees' counsel made no objection to "lack of pleading" regarding the 'abandonment' issue being allegedly waived or "defect in pleading" at any time when Appellants' counsel questioned Dr. Noriega about his

11

intent to return to 314 Goldenrod. R.R. 2 at 87-106. When Dr. Noriega was being examined about a tree growing in the back wall of 314 Goldenrod, Appellees' counsel objected, claiming that the question was not relevant. R.R. 2 at 112. Appellants' counsel responded stating that the testimony "goes to the intent to return to the home -- to the property." R.R. 2 at 112. The only response from Appellees' counsel was: "And now she's testifying. I object to that." No response about the significance of testimony regarding the Appellees' 'intent to return' was made. *Id.* The trial court overruled Appellees' objection finding that the testimony regarding the condition of the property "has some relevance." *Id.* No testimony was elicited about the wrongful execution cause of action.

### iii. Testimony of Brandi Brown - the Tenant Residing at 314 Goldenrod.

Appellees called the current tenant of 314 Goldenrod, Brandi Brown, to testify about her lease of the property. R.R. 3 at 59. When Ms. Brown testified that the lease "could go on forever," no objection was waged. R.R. 3 at 63. Ms. Brown also testified about the condition of 314 Goldenrod. She testified regarding a plumbing problem and a flooring repair that she reported to the Appellees when she moved in and that Appellees did not pay for the repairs. R.R. 3 at 65. Ms. Brown testified that she paid for the repairs herself. *Id.* Ms. Brown testified that there are three huge dead trees in the backyard. R.R. 3 at 66. She then testified that one of the trees is growing into the back wall of 314 Goldenrod. R.R. 3 at 66. She

12

also testified that she is concerned for the safety of the house as the roots of the tree are growing under the house, causing it to shift. *Id.* When asked whether Ms. Brown thought the trees could fall on a neighbor's house, Appellees' objected to the relevance of the question. *Id.* The trial court referred counsel to the ruling made regarding the condition of the house earlier in the trial when it overruled the relevance objection (i.e. it is relevant regarding the 'intent to return'). *Id.* Ms. Brown answered the question by stating that she thought the trees could fall on a neighbor's house if there is a large storm. R.R. 3 at 67. Throughout Ms. Brown's testimony, there was never an objection waged that Ms. Brown living there had nothing to do with the homestead status of the home in 1994.

### iv. Testimony from Sonia A. Noriega

Appellee, Sonia A. Noriega, also testified at trial. During direct examination, Mrs. Noriega testified about her plans to return to 314 Goldenrod. R.R. 3 at 76-82. She testified that "we've always thought of rebuilding and having, like, a New Orleans style home there and retiring." R.R. 3 at 76. She then stated that "Our plans are to come back to our home." *Id.* When asked if she agreed with Dr. Noriega's testimony he gave to the jury, she stated that she did. R.R. 3 at 77. She testified that she shares the factors Dr. Noriega testified about regarding his plans for the future. R.R. 3 at 78. Mrs. Noriega then testified that she and her daughter

13

have a Houston cell phone number because they plan to return to Houston. R.R. 3 at 82. No testimony was given about the wrongful execution cause of action.

### v. Testimony of Elizabeth Lousteau

Appellant, Elizabeth Lousteau testified that she moved next door to 314 Goldenrod in 2007. R.R. 3 at 106. Since she has lived next door to 314 Goldenrod, the Appellees never lived there. *Id.* Ms. Lousteau knew that Appellees did not live at 314 Goldenrod on March 4, 2014. *Id.* Ms. Lousteau also testified that at times during the past eight years she has lived next door, that 314 Goldenrod had been vacant - in between tenants. *Id.* Ms. Lousteau testified that she looked on the Harris County Appraisal District's website to see if there was a homestead designation and there was not. R.R. 3 at 107.

### vi. Testimony of Brett Clanton

Appellant, Brett Clanton testified that he is married to Ms. Lousteau and that they have been married for ten years. R.R. 3 at 108-109. They live with their three children next door to 314 Goldenrod. R.R. 3 at 109. Mr. Clanton testified that the Appellees never lived next door to them. *Id*.

### vii. Objection to the Testimony of Appellants' Previous Lawyer, Natalie Barletta.

When Appellants called Natalie Barletta to the stand to testify, Appellees objected. R.R. 3 at 111. The objection was "So everything Ms. Barletta did was to pursue execution on that judgment. And these are the documents that Ms. Robak

had that I objected to that are the writ of execution and the notices and the constable's deed and so forth. All of that has to do with the underlying judgment, which is -- I mean, it hadn't come in. It's not appropriate... " R.R. 3 at 110-111. Counsel for Appellants responded by stating that: The only thing we are going to have her testify about is what she did to see whether this property was designated as a homestead." R.R. 3 at 112. Counsel continued: "The only thing I was going to talk to her about was what she did. Like, did you go look at the property records. Did you look at HCAD? What did you find? ... what did you do to see whether or not there was a homestead?" *Id.* The trial court excluded Ms. Barletta's testimony.

### viii.   Charge Conference and Jury Charge

After the two-day jury trial concluded, the following questions were submitted to the jury:

> Question 1: Do you find that the real property and improvements commonly known as 314 Goldenrod, Houston, Texas was the homestead of Jaime L. Noriega and/or Sonia A. Noriega when they purchased the property in December of 1994? ("Question 1")
>
> Question 2: Do you find that the real property and improvements commonly known as 314 Goldenrod, Houston, Texas was the homestead of Jaime L. Noriega and/or Sonia A. Noriega on March 4, 2014? ("Question 2")

C.R. 2 at 56-64. No question was submitted to the jury regarding the wrongful execution or damages related thereto. *Id.* Likewise, no question was submitted to the jury regarding damages or specific performance.

During the Charge Conference, Appellants objected to Question 1, on the grounds that there was no basis in law or fact for the question. R.R. 3 at 120. Appellants objected because the declaratory judgment action was regarding whether 314 Goldenrod was Appellees' homestead when the execution took place on March 4, 2014, not whether it was Appellees' homestead in 1994. *Id.* The objection was overruled. R.R. 3 at 122. Appellees had no objections to Question 1. R.R. 3 at 119.

When asked whether Appellees had any objections to Question 2, Appellees responded "No, Your Honor, we have no objections to Question 2 or the instructions." R.R. 3 at 122. Appellants asserted one objection regarding one of the instructions, which has no bearing on this Appeal. R.R. 3 at 124.

### ix. The Verdict

The jury answered Question 1 "Yes." The jury answered Question 2, "No." C.R. 2 at 56-64. The jury found that 314 Goldenrod was not the Appellees' homestead on March 4, 2014. C.R. 2 at 60. The jury did not make a finding on wrongful execution claim. C.R. 2 at 56-64.

### d. The Judgment

The trial court issued an interlocutory judgment on December 22, 2014 declaring that 314 Goldenrod *was* the Appellees' homestead on March 4, 2014. ("the Interlocutory Judgment") C.R. at 65 (emphasis added). The trial court referred, in its judgment, to the disregarding of the jury's findings in Question 2 stating that: "The Court concluded that the first question and answer are material and dispositive and that the second question and answer are immaterial and should be disregarded." *Id.* Furthermore, the trial court awarded damages to Appellees by voiding the execution sale, returning possession of 314 Goldenrod, including Appellants' Deed to Appellees, within 30 days of the date of the judgment, and ordering Appellants to notify the current tenant to pay all future rental payments to Appellees within 30 days of the date of judgment. C.R. at 66-67. Additionally, Appellants were ordered to produce documents, keys, leases, written communications with tenants, and other indicia of ownership to Appellees within 30 days of the date of the judgment. *Id.* The trial court then found that "Plaintiffs further wish to go forward on a claim for damages for wrongful execution, which the Court will likely permit, subject to any dispositive motions on that subject by Defendants," C.R. at 67. No supersedeas bond amount was set. *Id.*

### e.    Post-Judgment Motions and Orders

Due to the trial court's orders within the Interlocutory Judgment being, in effect, final prior to the judgment being appealable, Appellants filed Defendants'

17

Emergency Motion to Delay Enforcement of Provision in Interlocutory Judgment or to Set a Supersedeas Bond for the Value of the Deed to 314 Goldenrod or to Permit Placement of the Deed Into the Registry of the Court. C.R. at 68-73. After an emergency hearing took place, the trial court signed an order requiring Appellants to place the Sheriff's Deed in the registry of the court. C.R. 1 at 81. In the Order Depositing Funds Into Registry, the trial court specifically stated that "This Order does not effect this Court's Interlocutory Judgment of December 22, 2015 (sic) in any other way." *Id.* No supersedeas bond was set. *Id.*

Appellants then filed a Motion to Modify while the trial court still had plenary power. C.R. at 82. No response was filed by Appellees. The Motion was denied. Again, no supersedeas bond was set. *Id.*

The trial court then, by order signed on February 13, 2015, consolidated the 2014 Lawsuit into the 2013 Lawsuit. Also by order signed on February 13, 2015, the trial court, *sua sponte*, severed the Interlocutory Judgment from the 2013 Lawsuit, in part, creating 2013-35448-B ("the Severed Case"). C.R. at 150.[2] In the order, the trial court stated; "It is therefore ORDERED that Plaintiff Jaime L.

---

[2] The 2013 Lawsuit is also being appealed in cause number 01-15-00341-CV, which is also assigned to the First Court of Appeals, the brief of which will be filed as soon as Appellants' Motion to Consolidate is ruled on. The Motion to Consolidate was filed on July 10, 2015, but as of the date of the filing of this Brief, no ruling had been made. Therefore, Appellants are filing this Appeal based on the grounds relating to 01-15-00254-CV alone, as well as the measures taken by the trial court in the 2013 Lawsuit issuing the severance. Appellants will be requesting an extension in cause number 01-15-00341-CV. Should the cases be consolidated, an amended appeal will need to be filed to reflect the consolidation.

Noriega and Sonia A. Noriega's causes of action for Bill of Review and Declaratory Judgment, as adjudicated in the Court's December 22, 2014 Interlocutory Judgment in 2014-14152 against Defendants Brett Clanton and Elizabeth A. Lousteau are hereby severed from this consolidated case into a new case." *Id.* Appellants objected to both the consolidation and the severance on the grounds that the 2014 Lawsuit had been submitted to a jury, a verdict had been rendered, and a judgment had been signed, so severing a cause of action after judgment was improper, according to TEX.R.CIV.PRO. 41. C.R. at 154. The objections were overruled. Appellants objected to the consolidation and severance orders signed by the trial court. C.R. at 154-156. No response was filed by Appellees. The objections were overruled.

On or about March 11, 2015, the trial court signed an Order Vacating February 13, 2015 Order In Part wherein the trial court put the Bill of Review matter back with the 2013 Lawsuit thereby making the judgment in the Severed Case final and appealable regarding the declaratory judgment action only. C.R. at 152-153. The damages and specific performance awarded by the trial court in conjunction with the declaratory judgment action remained in the Severed Case. C.R. at 153. No supersedeas bond was set.

Appellants filed the Notice of Appeal on March 16, 2015. C.R. at 158.

19

After the Notice of Appeal was filed, Appellants, again, moved for the trial court to set a supersedeas bond. C.R. at 164. The motion was denied. S.C.R at 15. In that Order, it appears the trial court was under the impression that Appellees were the parties that placed a deed into the Registry of the Court. *Id*. Based on that apparent misunderstanding, the trial court stated that security has been provided in this case. *Id.* In fact, Appellees had not filed their deed with the Registry of the Court. Appellants did. So, Appellants filed a Motion to Reconsider, which was denied. S.C.R. at 16. Based on the language in the original denial order on June 2, 2015, it appeared the trial court believed there to be ample security to supersede the Judgment, so that, as a result, Appellants could proceed to retake possession of 314 Goldenrod and commence receiving the rental payments to which they are entitled. But, to be sure, Appellants filed a Motion to Confirm Authority to Direct Rental Payments During Pendency of Appeal. S.C.R. at 18. That Motion was denied. S.C.R. at 21. As of the date of filing this Appellate Brief, Appellants have not been able to obtain to obtain a supersedeas bond amount from the trial court.

## V.        SUMMARY OF THE ARGUMENT

The case that was presented to the jury was about whether 314 Goldenrod is Appellees' homestead. Although a claim for wrongful execution was plead by Appellees, it was never presented to the jury by way of testimony, evidence, or in a jury question. C.R. at 56-64. Likewise, there was no jury question about actual

damages or specific performance. *Id.* Since the wrongful execution claim (and damages related thereto) was waived by Appellees, the only issue to be determined by the jury was whether 314 Goldenrod should be declared as Appellees' homestead on March 4, 2014, thus making it exempt from execution.[3]

After a 2-day trial to a jury regarding whether 314 Goldenrod was Appellees' homestead, two questions were submitted to the jury regarding the homestead issue. The first question asked whether 314 Goldenrod was Appellees' homestead when they purchased it in 1994. C.R. at 59. The second question asked whether 314 Goldenrod was Appellees' homestead on March 4, 2014, which is the date the execution took place. C.R. at 60. While wrongful execution was a cause of action in the Appellees' live pleading at time of trial, no evidence was presented on the claim and no jury question was submitted to the jury on wrongful execution. C.R. at 56 - 64. The jury's verdict was that 314 Goldenrod *was* Appellees' homestead in 1994, but it *was no longer* their homestead by the time the execution took place on March 4, 2014. *Id.*

Despite the jury's finding, the evidence to support it, and the Appellees' failure to file any post-verdict motions, the trial court disregarded the jury's findings and held that 314 *was* Appellees' homestead in 2014 and that Appellants

---

[3] Appellees also asked the jury about reasonable and necessary attorney fees, but since no cause of action supporting damages was decided by the jury, the trial court properly disregarded the jury question on attorney fees. In any event, whether attorney fees were found by the jury is not a part of this Appeal.

had to return possession of the property to Appellees within 30 days of the judgment. C.R. at 65-67. The trial court justified its decision by citing a section of *Saloman v. Lesay,* which states: Once a homestead was found to have been established, it could only lose such designation by abandonment, alienation, or death. *Saloman v. Lesay,* 369 S.W.3d 540, 554-57 (Tex.App.--Houston [1st Dist.] 2012, no pet.); C.R. at 65. Incidentally, Salomon was a case where the Appellant had a homestead designation on file and lived in the homestead at the time of the execution. *Id.* at 550. The trial court stated that "because the affirmative defense of abandonment was waived by Defendants, it could not have been found and, further, was not tried by consent." C.R. at 65-66. The trial court continued by finding that "the 'intent' element is a creature of the initial attachment of the homestead designation..." *Id*. at 66.

The trial court abused its discretion when it disregarded the jury's findings on a fact issue. Furthermore, the trial court was wrong on the law it applied to this case. First and foremost, whether a parcel of real property is someone's homestead is a fact issue for a jury to decide. *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 515 (Tex. 1998). In determining whether a parcel of real property is someone's homestead, a jury is to look at whether the real property was designated as a homestead in the real property records, the county appraisal district's records, or if no designation is found, whether the homestead claimant is using and

22

enjoying a property as a home. *Dodd v. Harper,* 670 S.W.2d 646, 649 (Tex. App. –

Houston [1st Dist.] 1983, no writ).

The Texas Property Code states that in order to designate property as a homestead, the homeowner must have filed the designation with either the real property records of the county in which the property is located or with the appraisal district. Specifically, the Texas Property Code states that:

> "To designate property as a homestead, a person or persons, as applicable, must make the designation in an instrument that is signed and acknowledged or proved in the manner required for the recording of other instruments. The person or persons must file the designation with the county clerk of the county in which all or part of the property is located." TEX. PROP. CODE § 41.005(c)(emphasis added).

Homestead rights have their origin in constitutional and statutory provisions, not in the common law. *Gann v. Montgomery,* 210 S.W.2d 255, 257–58 (Tex. Civ. App.—Fort Worth 1948, writ ref'd n.r.e.). There are no exemptions except those provided by law. *Id.* Courts cannot protect that which is not homestead. *Id., citing Whiteman v. Burkey,* 282 S.W. 788 (Tex.1926).

When no evidence of homestead exemption is found to have been filed, the courts have found that "the mere act of using and enjoying a property as a home, a person qualifies for the protections mandated by the Texas Constitution." *Saloman v. Lesay,* 369 S.W.3d 540, 550 (Tex.App.--Houston [1st Dist.] 2012, no pet.) quoting *Dodd v. Harper,* 670 S.W.2d 646, 649 (Tex.App-- Houston [1st Dist.]

23

1983, no writ). Once a homestead claimant proves that property is their homestead, there is a presumption that the homestead continues in the absence of evidence to the contrary." (citation omitted)); *Farrington V. First Nat'l Bank of Bellville*, 753 S.W.2d 248, 251 (Tex. App. – Houston [1st Dist.] 1988, writ denied); *Long Bell Lumber Co. V. Miller*, 240 S.W.2d 405, 406 (Tex. Civ. App. – Amarillo 1951, no writ).

When a homestead claimant moves from their homestead, as is the case here, the question of whether such property remains their homestead is dependent primarily upon the intention of the claimant. *McMillan v. Warner* 38 Tex. 410, 411 (Tex.1873); *West v. Austin National Bank* (San Antonio Tex.Civ.App.1968) and *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 465 (Tex. App - Waco, 1981, writ dism'd). The renting of the homestead, *prolonged absence*, and other circumstances and conduct of the owner of a homestead, are proper subjects to be considered in determining whether a homestead has been abandoned. *Carver v. Gray,* 140 S.W.2d 227, 231 (Tex. Civ. App. —Amarillo 1940, writ dism'd judgmt. cor.) (emphasis added). Whether a debtor temporarily rented out portions of his homestead property, or whether he did so permanently in such a manner as to abandon property as his homestead, is a question of fact under Texas law, on which the party opposing the homestead claim carries the burden of proof. *In re Norris,* 421 B.R. 782, 790 (S.D.Tex. 2009)(relying on *Perry,* which interpreted

24

long-standing Texas laws regarding 'temporary leasing'). The determination of whether or not the renting is temporary or permanent is dependent upon the intent of the head of the family as to whether or not he will again use the property as a homestead. If it be his intent to again use the property as a homestead, the rental is temporary; but if it be his intent not to again so use it, then it is permanent; and this is so without reference to the length of time covered by the rental contract."[4] *Houston Chronicle Pub. Co. v. Allen*, 70 S.W.2d 482, 484 (Tex. Civ. App.—Beaumont 1934, no writ).

Herein lies the main issue the jury was to decide in the present case. If 314 Goldenrod was ever considered to be Appellees' homestead, did they abandon it when they moved to Chicago, Illinois in 2006? The jury was provided a plethora of evidence that showed the alleged homestead exemption ceased to exist once Appellees moved away in 2006. *See* Testimony Chart in Subsection B, hereinbelow. Appellees admitted in their testimony that no one in their family has lived at 314 Goldenrod since 2006. R.R. 2 at 99-100. Since moving to Chicago in 2006, 314 Goldenrod has been rented out to various tenants. R.R. 2 at 100; R.R. 3 at 77. Since 2006, 314 Goldenrod has also been vacant. *Id.* Appellees testified that there are no immediate plans to return. R.R. 2 at 114; R.R. 3 at 77. While

---

[4] Appellants note that the trial court also erred when it alleged in the Interlocutory Judgment that 'intent' element is a creature of the initial attachment of the homestead designation, and is not something that fluctuates or goes away, thereby destroying the homestead nature of the property." The case law clearly indicates that there is an 'intent' element applied when determining whether a lease was temporary or permanent.

Appellees testified that they intend to return to 314 Goldenrod sometime in the future, they admit to having no immediate plans to return. R.R. 2 at 114-116; R.R. 3 at 77.

Likewise, the alleged reasons for wanting to return appeared illogical. For example, Appellees told the jury that they want to move back to 314 Goldenrod once their daughter goes off to college to save on expenses. R.R. 2 at 79. But, then they testified that they want to move back so their daughter can be close to her family. R.R. 2 at 77. They also testified that they want to retire in Houston. R.R. 3 at 76. But, they also testified that Dr. Noriega wants to get a job at University of Houston so he can move back. R.R. 2 at 82. There were numerous obvious inconsistencies as to whether they wanted to move back to retire or so that Dr. Noriega could find work. If they are wanting their daughter to be near family, it was unclear why they would wait to move back until after she goes off to college? It is clear why the jury was apparently skeptical of the testimony about Appellees' intentions to return to 314 Goldenrod, and then why they found that in 2014, 314 Goldenrod was no longer Appellees' homestead.

The case law shows that where a homestead claimant moves from property that has been previously impressed with homestead character, the question of whether such property continues as a homestead is dependent primarily upon the intention of the claimant. *Sanchez v. Telles*, 960 S.W.2d 762, 769 (Tex. App.

26

1997); *West v. Austin Nat'l Bank,* 427 S.W.2d 906, 911–12 (Tex.Civ.App.-San Antonio 1968, writ ref'd n.r.e.) (citing *McMillan v. Warner,* 38 Tex. 410, 411 (1873)). In order to find that a property is someone's homestead when no homestead filing is found, as in this case, it is essential that there be an existing bona fide intention to dedicate the property as a homestead, and the intent must be accompanied by such acts of preparation and such prompt subsequent occupation as will amount to notice of the dedication. *Simank v. Alford,* 441 S.W.2d 234, 237 (Tex.App.-Austin 1969, writ ref'd n.r.e) (citing *Gardner v. Douglass,* 64 Tex. 76 (1885)). No evidence was presented by Appellees that showed an existing bona fide intention to dedicate the property as a homestead. The fact of the matter is, Appellees testified that their family moved out of 314 Goldenrod in 2006 and have never returned. Therefore, the homestead exemption had been abandoned.

Appellants, Elizabeth Lousteau and Brett Clanton, submit that the trial court abused its discretion when it issued the Interlocutory Judgment which ordered, among other things, that the issue of whether Appellees abandoned their alleged homestead when they moved to Chicago, Illinois was waived by Appellants and not tried by consent. In fact, abandonment was tried by consent from all parties. The issue of abandonment was anticipated in Appellees' pleadings and was present on both parties' live pleadings at time of trial. Secondly, a majority of the evidence presented at trial by Plaintiffs went *only* to whether Appellees abandoned their

27

homestead exemption by moving to Chicago in 2006 without an intent to return to 314 Goldenrod. Pleading in anticipation of the abandonment defense, and eliciting the testimony on 'intent to return' shows that they understood abandonment was an issue in this case. Therefore, the trial court erred in finding that abandonment was not tried by consent.

Additionally, because Jury Question 2, asking whether 314 Goldenrod was Appellees' homestead on March 4, 2014, was material to the issues being tried, the trial court abused of discretion when it disregarded it.

Furthermore, the trial court erred in submitting Question 1 to the jury, as it was not controlling and, standing alone, could not have awarded Appellees the declaratory relief they were requesting. After all, Question 1 dealt with the homestead status of 314 Goldenrod in 1994 and the property was not executed on until 2014. As evidence by the testimony at trial in this matter, a lot can happen in twenty years. Furthermore, there was no testimony or evidence that showed Appellees qualified for a homestead exemption in December of 1994.

The court also erred in issuing an interlocutory judgment after trial, finding that Appellees can continue to pursue their claim for wrongful execution, despite it being waived at trial.

Finally, the trial court erred by awarding damages to Appellees by requiring the rental payments from the current tenant be paid to Appellees when no liability for any cause of action awarding damages was found by a jury.

As a result, Appellants are seeking a reversal of the Interlocutory Judgment, that this Court render a judgment that orders that 314 Goldenrod was not Appellees' homestead on March 4, 2014, and that Appellees take nothing by way of their claim for wrongful execution, as it was waived, no question on wrongful execution having been submitted to the jury.

## VI.        ARGUMENT

### A.        The trial court erred in disregarding the jury's finding on a fact issue.

The trial court erred when it entered the Interlocutory Judgment that disregarded the jury's finding in Question 2 because whether or not a piece of property is someone's homestead is a fact issue for a jury to decide. *Brown v. Bank of Galveston,* Supra. A court has no authority to substitute its finding for that of a jury. *Highlands Ins. Co. v. Baugh*, 605 S.W.2d 314, 319 (Tex. Civ. App.— Eastland 1980, no writ). Texas Rule of Civil Procedure 300 provides:

> Where a special verdict is rendered.....the court shall
> render judgment thereon unless set aside or a new trial is
> granted, or judgment is rendered notwithstanding verdict
> or jury finding under these rules.

29

TEX. R. CIV. P. 300. No Judgment Notwithstanding the Verdict, Motion to Set Aside, or Motion for New Trial was filed by Appellees in this case.

Question 2 went directly to whether 314 Goldenrod was Appellees' homestead on March 4, 2014. C.R. at 60. By disregarding the jury's verdict on the homestead issue, *sua sponte*, the trial court substituted its own views for that of the jury without a valid basis. Such an action is inapposite of the Texas Constitution's guarantee of a trial by jury, as well as the Supreme Court's requirement that trial courts enter judgments on the verdicts rendered by the juries. *See, e.g., In re Columbia Medical Center of Las Colinas*, 290 S.W.3d 204, 213 (Tex. 2009)(case dicta discussing the importance of issuing a judgment on a jury's verdict).

The Texas Constitution sets forth that: "The right of trial by jury shall remain inviolate." *See* Tex. Const. art. I, § 15, art. V, § 10. Jury trials are essential to our constitutionally provided method for resolving disputes when the parties themselves are unable to do so. *See Wal–Mart Stores, Inc. v. Seale*, 904 S.W.2d 718, 722 (Tex. App.-San Antonio 1995, no writ); Tex. Const. art. I, § 15, art. V, § 10. In *Wal–Mart Stores, Inc. v. Seale*, the appellate court recognized that a jury's decision is not to be tampered with lightly, regardless of whether it favors the plaintiff or the defendant. *See Wal-Mart*, 904 S.W.2d 718, 722. The jury has, and should have, the final word on facts. *Carr v. Jaffe Aircraft Corporation*, 884 S.W.2d 797, 799 (Tex. App.—San Antonio 1994, no writ).

30

Not only did the trial court disregard the Constitution when it disregarded Question 2, it also disregarded the Supreme Court's mandate which requires trial courts to abide by their ministerial duty to enter a judgment on the verdict. *Traywick v. Goodrich,* 364 S.W.2d 190, 191 (Tex. 1963).

It is the well-settled law of this State that:

> "the entry of judgment upon a valid verdict involves no judicial or discretionary powers, but is simply a ministerial act..."

*Gulf, C. & S.F. Ry. Co. v. Muse*, 109 Tex. 352, 207 S.W. 897 (1919) (Comm'n App. 1926) (citing *Lloyd v. Brinck*, 35 Tex. 1 (1872); *Clark v. Pearce*, 80 Tex. 146, 15 S.W. 787, (1891); *Hume v. Schintz,* 90 Tex. 72, , 36 S.W. 429 (1896); *Houston & T.C.R. Co. v. Strycharski*, 92 Tex. 1, , 37 S.W. 415, (1896); *St. Louis S.W. Ry. Co. of Texas v. McArthur*, 96 Tex. 65, , 70 S.W. 317 (1902); *Armstrong v. Hix*, 107 Tex. 194, , 175 S.W. 430 (1915); *Railway Co. v. Muse,* 109 Tex. 352, 207 S. W. 897, 4 A. L. R. 613). A jury in this State has great power, as it should, when determining a fact issue. *Carr v. Jaffe Aircraft Corporation,* 884 S.W.2d 797, 799 (Tex.App.—San Antonio 1994, no writ)(a case involving a trial court's erroneous disregard of a jury finding by granting a new trial). Jurors are "the sole judges of the credibility of the witnesses and the weight to be given to their testimony." *Id.* In the present case, when the trial court disregarded the finding of twelve jurors, it erred, as it violated the Constitution and more than 100 years of Texas case law that has upheld juries' findings on fact issues. For that reason, the

judgment should be reversed and a judgment rendered for Appellants consistent with the jury's verdict: that 314 Goldenrod was *not* the Appellees' homestead on March 4, 2014 and take nothing on their claim for wrongful execution.

**B.     The trial court erred by finding that abandonment was NOT tried by consent.**

**i.     Standard of Review.**

An issue is tried by consent when both parties present evidence on an issue and the issue is developed during trial without objection. *Ingram v. Deere,* 288 S.W.3d 886, 893 (Tex.2009); *see* TEX.R. CIV. P. 67 (issues not raised in pleadings that are tried by consent are "treated in all respects as if they had been raised in the pleadings"). The trial court has broad discretion in determining whether an unpleaded claim has been tried by implied consent of the parties. *Compass Bank v. MFP Fin. Servs., Inc.,* 152 S.W.3d 844, 855 (Tex.App. - Dallas, pet. denied)

**ii.     The trial court abused its discretion.**

The trial court erred when it determined that the abandonment issue was *not* tried by consent because not only was the defense pled in both parties' live pleadings at time of trial, the reporter's record is abundant with testimony *elicited by both parties without objection* regarding their intent to return to 314 Goldenrod at some point in the future. But also, Appellees did not object, in the Charge Conference, to the submission of jury question number 2 that went directly to the abandonment issue. R.R. 3 at 122. Finally, neither the clerk's record or reporter's

32

record show that a motion for directed verdict, motion for judgment notwithstanding the verdict, or motion for new trial was filed by Appellees that would indicate any disagreement with the jury's findings. Clearly, by Appellees' own actions (or lack thereof), abandonment was tried by consent, and the trial court erred in finding, *sua sponte*, that abandonment was *not* tried by consent.

### iii. The abandonment issue was apparent on the face of Appellees' live pleading at the time of trial, therefore it could not have been waived by Appellants.

Abandonment was not waived by Appellants because it was apparent on the face of Appellees' pleadings at time of trial. Abandonment is traditionally an affirmative defense that needs to be pleaded, according to Texas Rule of Civil Procedure 94. However, the requirement that affirmative defenses be pled is not absolute. Rule 94's purpose "is to give the opposing party notice of the defensive issue to be tried."*Land Title Co. of Dallas, Inc. v. F.M.Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex. 1980). Therefore, it is axiomatic that when a Plaintiff in a lawsuit has pleadings that anticipate a defense, such as is the case with the Appellees' Suit for Declaratory Judgment, there is no need to identify the defense. *Phillips v. Phillips,* 820 S.W.2d 785 (Tex.1991) (citing *Raney v. White,* 267 S.W.2d 199, 200 (Tex. Civ. App. – San Antonio 1954, writ ref'd)).

In fact, in *Phillips,* the Supreme Court held that "when a plaintiff in his pleadings anticipates defensive matters and pleads them, the defendant may rely

upon defenses though his only pleading is a general denial." *Id*. The *Phillips* exception was followed by the Supreme Court in *Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933, 937 (Tex.1992). The *Phillips* exception was also relied upon by this Court in *Rosales v. Williams,* 2010 WL 457536, at 6 (Tex.App.-Houston [1st Dist.] 2001, no pet.) and the 14th Court of Appeals in *RR Maloan Investments, Inc. v. New HGE, Inc.,* 428 S.W.3d 355, 362 (Tex.App.—Houston [14th Dist.] 2014), *reh'g overruled* (May 1, 2014). Many other appellate courts throughout Texas have also relied on the Phillips exception. *See for example Park v. Escalera Ranch Owners' Ass'n, Inc.*, 2015 WL 737424, at 17, - S.W.3d – (Tex. App. – Austin Feb. 13, 2015, no pet. h.); and *Komet v. Graves,* 40 S.W.3d 596, 602 (Tex.App. -- San Antonio 2001, no pet.).

In 2010, this Court analyzed the *Phillips* exception in its holding in *Rosales v. Williams*. See *Williams*, 2010 WL 457536 at 6. The parties were disputing whether 'mitigation of damages' was tried by consent. *Id.* at 2. While Rosales had not pled the affirmative defense of 'mitigation of damages,' the record showed that Williams pled that "Plaintiffs reasonably mitigated their damages." *Id.* at 3. In its holding, this Court relied upon the *Phillips* exception when it held that Williams anticipated the defense of 'mitigation of damages' in the pleadings, which allowed Rosales to properly respond with a general denial. This Court properly found that: "Because the plaintiffs' petition claimed they reasonably mitigated damages, the

34

defendants' filing of a general denial, "den[ying] each and every allegation of Plaintiffs' Original Petition," put failure to mitigate at issue in the case. *Id.* at 3.

This Court should hold similarly in the present case. Here, Appellees pled that "The Noriegas have never abandoned their homestead, conversely, they intend to return to Houston at some point and live in the future." C.R. at 15 (Paragraph 38). Next, Appellees pled that "they have never abandoned (314 Goldenrod) as their homestead." *See Id.* (Paragraph 40). Since Appellees put the defense at issue in the case, Appellants did not need to affirmatively plead it. *See Phillips 826 S.W.2d 933; Williams* at 6; *RR Maloan Investments, Inc.* 428 S.W.3d at 362; *Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933 (Tex.1992)*; Lewkowicz v. El Paso Apparel Corp.,* 625 S.W.2d 301, 303 (Tex.1981). Therefore, abandonment did not need to be specifically plead for by Appellants in order for them to use the defense. Thus, abandonment was not waived by Appellants and Question 2 should not have been disregarded by the trial court.

### iv. The abandonment issue was also on the Appellants' live pleading at time of trial.

As referenced in the Statement of the Facts, Appellants pled the affirmative defense of abandonment in their Second Amended Answer. S.C.R. at 3. When Appellees' filed a motion to strike the defenses or, in the alternative, a lengthy continuance, Appellants filed a motion for leave to amend its pleadings to remove those defenses so that the case could move forward to trial. C.R. at 28. The trial

35

court only granted Appellants' motion for leave regarding the "fees issue only." C.R. at 34. In fact, this portion of the Order was hand-written in by the trial court. *Id.* Therefore, all other grounds for the motion for leave, including the portion wherein Appellants requested to remove 'abandonment' from its Second Amended Answer, were not granted. No motion to reconsider or motion for clarification was filed by Appellees. Thus, at trial, the record shows that abandonment was an affirmative defense in Appellants' live pleading. Therefore, Question 2 should not have been disregarded by the trial court.

### v. Whether Appellees abandoned their alleged homestead was tried by consent.

If this Court finds that the issue of whether Appellees' abandoned their homestead exemption by March 4, 2014 was not on the face of either of the parties' pleadings at time of trial, it should find that the issue was nevertheless tried by consent. An issue is tried by consent when both parties present evidence on an issue and the issue is developed during trial without objection. *Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445–46 (Tex. 1993); *Ingram v. Deere,* 288 S.W.3d 886, 893 (Tex. 2009); *see* TEX.R. CIV. P. 67 (issues not raised in pleadings that are tried by consent are "treated in all respects as if they had been raised in the pleadings").

In *Sage St.,* Supra, the Supreme Court discussed whether the trial court should have submitted a contract's ambiguity to the jury, although neither party

pleaded it. *Sage St.,* 863 S.W.2d at 444–46. In analyzing the issue, the Supreme Court determined that because *both* parties presented conflicting testimony on the subject and allowed the issue to be raised in the jury charge, the contract's ambiguity was tried by consent. *Id.* (finding that the record showed that the jury was called upon to resolve the issue by virtue of the fact a jury question was submitted to them on the issue). The Supreme Court later reiterated its holding in *Sage St.* when it ruled on the same issue in *Ingram v. Deere,* 288 S.W.3d 886, 893 (Tex.2009). Here, not only did both parties present evidence at trial to affirm or controvert whether Appellees abandoned 314 Goldenrod when they moved to Chicago, Illinois in 2006, never to return, but also, Appellees submitted the issue in the jury charge regarding whether 314 Goldenrod remained their homestead on March 4, 2014. Further, Appellees did not object to the jury's finding regarding it! C.R. at 56-64. In the present case, the abandonment issue was clearly developed at trial, and both parties understood that it was contested, as in *Sage St.* and *Ingram. Sage St.,* 863 S.W.2d at 444–46; *Ingram* 288 S.W.3d at 893. Accordingly, the trial court abused its discretion by disregarding the finding in Jury Question 2.

This Court recently analyzed the issue regarding whether an unpled defense of 'bad faith' was tried by consent. *See Lee v. Lee*, 411 S.W.3d 95, 106-07 (Tex.

App. -- [1st Dist.] 2013, no pet.)[5]. In the *Lee* case, the trial court awarded treble damages by finding that section 93.011 of the Texas Property Code's "bad faith" provision applied to the case, despite the lack of pleadings, lack of testimony regarding bad faith, and no jury question addressing bad faith, such that the jury could have awarded treble damages pursuant to the Texas Property Code. *See Lee v. Lee,* 411 S.W.3d at 106. In the *Lee* opinion, this Court properly applied the *Sage St.* and *Ingram* holdings when detailing the standard for determining whether an upled issue was tried by consent.

The ultimate holding in *Lee* was that the record showed a 'dearth' of evidence that the parties tried the issue of bad faith. *Id.* at 107. (No testimony was elicited on whether his actions were in bad faith and the landlord also did not present evidence to attempt to rebut the presumption of bad faith.) Likewise, the record in *Lee* showed that the plaintiff had not included an instruction for bad faith, or damages related thereto, in the jury charge. *Id.* Therefore, this Court found that the trial court erred in awarding the treble damages -- as there was no evidence presented at trial and no question submitted to the jury regarding treble damages. The present case presents the exact opposite record. In fact, testimony regarding whether Appellee's abandoned their homestead was abundant throughout the trial. The testimony shows that both parties presented evidence on abandonment and

_____

[5] The *Lee* appeal came out of the 151st Judicial District Court in Harris County, as does the present case.

38

understood it to be contested. *Lee* v. *Lee* at 107; *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.,* 345 S.W.3d 537, 567 (Tex. App. – San Antonio 2011, no pet.); *see also Ingram,* 288 S.W.3d at 892–93 (issue tried by consent when both parties presented evidence at trial on it and it was submitted in the jury charge).

## vi.  Both parties presented evidence on abandonment and it was understood to be contested.

The court erred when it stated in its Interlocutory Judgment that "...the affirmative defense of abandonment was waived by Defendants, it could not have been found and, further, was not tried by consent." C.R. at 65.  To determine whether an unpleaded issue was tried by consent, the trial court examines the record not for evidence of the issue, but rather for evidence of trial of the issue. *Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex. App. – Houston [1st Dist.] 1993, writ denied). In the present case, the record shows that the abandonment issue was tried. Both parties included the abandonment issue in their live pleadings at time of trial and offered testimony regarding abandonment during trial. Further, Appellees did not object to the introduction of abandonment evidence or to the jury question that necessarily went to the heart of the issue of abandonment by asking is 314 Goldenrod was Appellees' homestead on March 4, 2014. Therefore, as explained in more detail below, the evidence in the record shows that the issue of whether Appellees abandoned 314 Goldenrod when they moved to Chicago, Illinois was, in fact, tried.

### a. Appellees opened the door in their Opening Statement

By telling the jury that Appellees moved to Chicago, Illinois in 2006, but that they intend to return to Houston and live at 314 Goldenrod again in the future, the door to the issue of whether Appellees' abandoned their homestead had been opened.

For example, in the opening statement, counsel for Appellees told the jury "a homestead, once designated, remains a homestead until it is somehow – it goes away." R.R. 2 at 8. From there on, the opening statement was replete with references to the Appellees' intent to return to 314 Goldenrod after they moved to Chicago in 2006. The jury was also told that the Appellees still live in Chicago "temporarily." R.R 2 at 16. The jury was then told that Appellees have leased 314 Goldenrod out "on a one-year basis multiple times to different tenants." R.R. 2 at 13. Despite later testimony that Chicago, Illinois is their primary residence (R.R. 2 at 101), counsel for Appellees told the jury "You're going to hear from both of the Noriegas that at every moment in time and especially in 2006, they intended to come back here to their home." R.R. 2 at 12. Appellees' counsel even explained to the jury that "Their parents are still here….That's something that the Noriegas keep in mind and are factors in helping them to decide when they're actually going to make that move back in the next few years." R.R. 2 at 16. Thereafter, and as explained more particularly in the chart hereinbelow, Appellees testified repeatedly

40

about their intent to return to 314 Goldenrod. If the issue of whether they abandoned their homestead when they moved to Chicago, Illinois in 2006 was not at issue in the trial, Appellees should have never told the jury of Appellees' future intentions to return to 314 Goldenrod. Furthermore, they should have objected to 'relevance' anytime the subject of 'intent to return' was brought up in trial.

Texas courts have held that when a homestead claimant moves from their homestead, the question of whether such property remains their homestead is dependent primarily upon the intention of the claimant. *McMillan v. Warner* 38 Tex. 410, 411 (Tex.1873); *West v. Austin National Bank* (San Antonio Tex.Civ.App.1968) and *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 465 (Tex. App - Waco, 1981, writ dism'd). The renting of the homestead, *prolonged absence*, and other circumstances and conduct of the owner of a homestead, are proper subjects to be considered in determining whether a homestead has been abandoned. *Carver v. Gray,* 140 S.W.2d 227, 231(Tex. Civ. App. —Amarillo 1940, writ dism'd judgmt. cor.) (emphasis added).

The offerings of counsel in the Opening Statement regarding Appellees' intent to return to 314 Goldenrod were only relevant to support Appellees' claim that they did not abandon their alleged homestead.

**b.** **Appellees testified repeatedly about their 'intent to return' in trial.**

The evidence in the reporter's record shows that all parties presented evidence regarding the issue of whether Appellees abandoned their homestead when they moved to Chicago, Illinois in 2006, therefore, the issue was tried by consent. No objections to this testimony were made. Below is a Testimony Chart containing a summary of the testimony of Dr. Jaime L. Noriega attempting to disprove that he and his wife had abandoned their alleged homestead:

**Testimony Chart**

| Direct Examination Testimony of Appellee, Dr. Jaime Noriega | Record Cite |
|---|---|
| Dr. Noriega testified about the alleged temporary lease to Brandi Brown. | R.R. 2 at 51-53 |
| Dr. Noriega testified that after he moved to Chicago, his intention towards 314 Goldenrod as being his homestead had not changed. | R.R. 2 at 66. |
| Q. And you have -- have you ever made any sort of an agreement with anybody that would change your homestead claim to the document -- I'm sorry, to the property?<br>A. No. | R.R. 2 at 71. |
| Dr. Noriega testified that he and his wife leased 314 Goldenrod. | R.R. 2 at 71-71 |
| Q. What are your plans for the future concerning 314 Goldenrod?<br>A. It's always been our plan to return there to live there. | R.R. 2 at 76 |
| Q. Are there factors that are in your decision about when you will return to 314 Goldenrod to live?<br>A. So one of the factors was our daughter's education. | R.R. 2 at 77 |

42

| | |
|---|---|
| Another factor is my parents. They are elderly, they're in their late 70's, and they live less than two miles away. So it's always been our hope to be back with family. Something else that has weighed very heavily is that we have an only child. So all she has is her cousins. And they all live here. There's a few that live in Corpus Christi, a few hundred miles away, but certainly that's closer than Chicago. So for all those reasons, we've always had in mind to return to Houston to live in our home. | |
| Q. And how do you like Houston as a place to live?<br>A. We've always liked it. | R.R. 2 at 78 |
| Q. And so how do you like living in Chicago?<br>A. It's fine. It's a very expensive city to live in. So all the wonderful things you hear about, well, you have to be able to afford them. | *Id.* |
| Q. So, let's talk about that. The cost of living?<br>A. Yes, it's incredibly high....living in Houston would be rent free. We would own it outright and that would lower our budget significantly.... | R.R. 2 at 79 |
| Q. Would you have any rent -- would you have a rent expense at all if you moved back to your home at 314 Goldenrod?<br>A. No, we would not. | R.R. 2 at 79-80 |
| Dr. Noriega testified at length about what it means to be a tenured professor and why he had to teach at another university for a certain amount of time before trying to come back to the Houston to teach at University of Houston. | R.R. 2 at 80-82. |
| Dr. Noriega testified that getting a job at the University of Houston would fit into his "plan" to come back to Houston. | R.R. 2 at 82. |

On cross examination, Dr. Noriega testified as follows:

| Cross Examination Testimony from Dr. Jaime Noriega | Record Cite |
|---|---|
| Q. In your affidavit you testified that...we did not abandon | R.R. 2 at 93 |

| | |
|---|---|
| the property as our homestead just because we changed the tax exemption. Did I read that right?<br>A. Yes. | |
| Q. You did not intend for 314 Goldenrod to be your homestead with HCAD for homestead tax purposes on March 4, 2014?<br>A. That is correct. | R.R. 2 at 98 |
| Q. 314 Goldenrod was also not designated as your homestead with the Harris County Real Property Records on March 4th, 2014, was it?<br>A. I do not believe so, no. | R.R. 2 at 99 |
| Q. And you admit that you and your family moved out of 314 Goldenrod sometime in 2006, correct?<br>A. Yes | R.R. 2 at 99-100 |
| Dr. Noriega testified that since moving to Chicago, no one in his family has lived at 314 Goldenrod. | R.R. 2 at 100 |
| Dr. Noriega testified that since moving to Chicago, there have been times that 314 Goldenrod was vacant. | *Id.* |
| Dr. Noriega testified that since 2006, 314 Goldenrod has had tenants living there on and off. | *Id.* |
| Q. Your primary residence was in Chicago, Illinois on March 4, 2014<br>A. Yes. | *Id.* |
| Q. So you have to be in Illinois to conduct your job?<br>A. Yes | *Id.* |
| Dr. Noriega testified that he lives in Chicago, his primary address is in Chicago, his voter's registration card is in Illinois, he has an Illinois driver's license, he spends most of his non-working hours in his home in Chicago, he keeps his clothing there, his bills are sent there, the address his employers and daughter's school have is his Chicago, Illinois address. | R.R. at 101-108. |
| Q: So, you do not have any immediate plans to return to Houston, do you?<br>A. Not immediate. | R.R. 2 at 114 |
| Q: You don't have movers backed or booked to move | *Id.* |

44

| | |
|---|---|
| back? A: No. | |
| Dr. Noriega testified that he does not have a job located here in Houston. | R.R. 115-116. |

Sonia Noriega's testimony was also full of statements regarding her intention to move back and retire at 314 Goldenrod:

| Direct Examination of Sonia Noriega | |
|---|---|
| Ms. Noriega testified that she plans to come back to 314 Goldenrod one day. She loves the location of 314 Goldenrod and standing on the roof to see all of Houston. She always thought of rebuilding and having a New Orleans style home there, retiring, and being near family. | R.R. 3 at 76 |
| Ms. Noriega and her husband plan to come back to Houston after their child finishes high school and goes to college. | R.R. 3 at 77. |
| Ms. Noriega agrees with her husband's testimony regarding their intent to return to 314 Goldenrod. | *Id.* |
| Ms. Noriega's cell phone number still has a Houston area code because "I plan to return." | R.R. 3 at 81-82 |
| Appellees' daughter also has a Houston cell phone number because she knows "we're going to eventually come back to Houston." | R.R. 3 at 82 |

If the trial court's homestead law analysis in the Interlocutory Judgment is correct and "the 'intent' element is a creature of the initial attachment of the homestead designation, and is not something that fluctuates or goes away, thereby destroying the homestead nature of the property" (C.R. at 66), all of the above summarized testimony would have been wholly irrelevant to the homestead issue.

45

Because that testimony could not have been relevant to the initial attachment of the homestead designation, *the testimony would only be relevant to prove that the Noriegas did not abandon their alleged homestead exemption when they moved from 314 Goldenrod.* There is no other purpose for presenting that evidence as it did not go to prove any element required to show the initial attachment of homestead exemption in 1994 or wrongful execution claim. Since there is no cause of action pled by Appellees where testimony regarding 'moving away from their home,' their 'intent to return to their home sometime in the future', or 'renting the home to tenants' is remotely relevant, and that testimony goes directly to whether Appellees abandoned their alleged homestead, it is clear that 'whether the alleged homestead was abandoned when Appellees moved to Chicago, Illinois' was one of the main issues being tried.

The case law has found that once a homestead claimant moves from property which has been previously impressed with the homestead character, the question of whether such property constitutes a homestead is dependent primarily upon the intention of the claimant. *McMillan v. Warner* 38 Tex. 410, 411 (Tex.1873); *West v. Austin National Bank* (San Antonio Tex.Civ.App.1968) and *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 465 (Tex. App - Waco, 1981, writ dism'd). Because disproving that Appellees abandoned their homestead when they moved away from it was the only possible purpose for their counsel to have

46

elicited testimony regarding their intentions after they moved to Chicago and whether they intended to return to 314 Goldenrod in the future, the abandonment issue was tried by consent. Likewise, since all of the above testimony was presented at trial, without objection, and it could have only gone to support the abandonment issue, any defects in the pleading (as alleged by the trial court, not either of the parties), should be waived. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex.2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived.").

>    **c.    Evidence regarding 'temporary leasing' shows that whether the alleged homestead status of 314 Goldenrod was abandoned was at issue.**

By eliciting testimony on the alleged temporary renting and not objecting to the jury instruction on temporary renting, Appellees showed that they knew the issue being tried was whether 314 Goldenrod had lost its homestead character by way of abandonment when they moved to Chicago and rented 314 Goldenrod out to tenants. Question 2 had the following instruction:

>    Temporary renting of a homestead does not, by itself,
>    change its homestead character if the homestead claimant
>    has not acquired another homestead. C.R. at 60.

Texas courts have consistently linked 'abandonment' with whether the property was temporarily - or permanently leased to others. It is true that

temporary renting of the homestead does not, by itself, constitute abandonment. *Drake Interiors, L.L.C., v. Thomas,* 433 S.W.3d 841, 847-48 (Tex.App. - Houston [14th Dist.] 2014, no pet.); *Hollifield v. Hilton,* 515 S.W.2d 717, 721 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.). It is axiomatic that if temporary leasing of a homestead cannot, by itself, constitute abandonment, *permanent* leasing of a homestead *can* constitute abandonment. In fact, since before 1908, Texas Courts have consistently held that one who rents a section of his property *continuously to others*, abandons that portion of his property for purposes of the homestead laws. *Autry v. Reasor,* 102 Tex. 123, 113 S.W. 748 (1908). *See also, Blum v. Rogers*, 78 Tex. 530, 15 S.W. 115, 117 (1890); *Uvalde Rock Asphalt Co. v. Warren*, 127 Tex. 137, 91 S.W.2d 321, 324 (1936); *Yates v. Home Building & Loan Co.*, 103 S.W.2d 1081, 1085 (Tex. Civ. App. 1937); *Texas Building & Mortgage Co. v. Morris*, 123 S.W.2d 365, 371 (Tex. Civ. App. 1938); and *Long Bell Lumber Co. V. Miller*, 240 S.W.2d 405, 406 (Tex. Civ. App. – Amarillo 1951, no writ).

Federal Courts, when interpreting Texas state law, have also held that continuous renting of a parcel of property does not make a homestead. *Perry v. Dearing,* 345 F.3d 303, 318 (5th Cir. 2003); *In re Brown*, 78 B.R. 486, 487 (Bankr. N.D. Tex 1987) (stating that Texas "case law does not regard the continuous rental of farmland as a use "for the purposes of a home.") These cases

48

hold that by permanently renting the property to others, the owners surrender possession and control of the property. *See, e.g., Texas Building & Mortgage Co. v. Morris,* 123 S.W.2d 365, 371 (Tex.Civ.App.1938). In so doing, they evince an intention to abandon it for homestead purposes. *Id.* Thus, the renting of the homestead, *prolonged absence*, and other circumstances and conduct of the owner of a homestead, are proper subjects to be considered in determining the question of abandonment. *Carver v. Gray,* 140 S.W.2d 227, 231(Tex. Civ. App. —Amarillo 1940, writ dism'd judgmt. cor.) (emphasis added). Whether a debtor temporarily rented out portions of his homestead property, or whether he did so permanently in such a manner as to abandon property as his homestead, is a question of fact under Texas law, on which the party opposing the homestead claim carries burden of proof. *In re Norris,* 421 B.R. 782, 790 (S.D.Tex. 2009) (relying on *Perry,* which interpreted long-standing Texas laws regarding 'temporary leasing'). Given these cases and the evidence elicited by Appellees at trial, it should have been abundantly clear to the trial court that whether Appellees' abandoned their homestead by continuously renting it out to others was tried by consent.

1.    **Evidence was presented regarding the rental agreements.**

Appellants met that burden by presenting evidence of the permanent renting of 314 Goldenrod from 2006 to present by and through the testimony of the Appellees, Dr. Noriega (*See* chart in Subsection B), Ms. Noriega (*See* chart in

49

Subsection B), the tenant, Brandi Brown, and the Appellants, Elizabeth Lousteau, and Brett Clanton. Appellants even elicited testimony through the current tenant, Brandi Brown, that her lease could go on forever. R.R. 3 at 63. No objection was made to any of those lines of questioning that could have preserved a challenge to the testimony on appeal.

Furthermore, Appellees offered their own testimony, as well as testimony from the current tenant at 314 Goldenrod, that went directly to the 'temporary renting' and 'abandonment' issues. Dr. Noriega testified that they rented 314 Goldenrod to tenants on and off throughout the years since they moved to Chicago. R.R. 2 at 100. He further testified that it was vacant at times, as well. *Id.*

Clearly, the only reason to explain to a jury, by way of jury instructions, that a 'temporary leasing' does not mean the homestead status was abandoned is to help the jury understand what constitutes abandonment. Given this instruction and the jury's finding on whether 314 Goldenrod remained the homestead of Appellees in 2014, it would have been more reasonable and in line with the Texas Constitution and the Texas Rules of Civil Procedure, for the trial court to determine that the jury concluded that 314 Goldenrod was *permanently* leased, and thus, abandoned, rather than disregarding the jury's answer to Question 2 altogether.

**2.  The jury was instructed on how a temporary rental affects a homestead designation.**

Even further, if the trial court's justification that the "intent" element only applies to the initial attachment of a homestead, then the need for an instruction on 'temporary leasing' would have been moot. Since the instruction on temporary leasing was provided to the jury, without objection, one reasonable explanation of the jury's findings is that the jury determined that 314 Goldenrod was Appellees' homestead when they bought it in 1994, but that it ceased being their homestead when they moved to Chicago and never returned. Clearly, the jury found that it was not Appellees' homestead in 2014. In *Houston Chronicle Publishing Company v. Allen,* the Court of Appeals in Beaumont set forth the following rule: "The determination of whether or not the renting is temporary or permanent is dependent upon the intent of the head of the family as to whether or not he will again use the property as a homestead. If it be his intent to again use the property as a homestead, the rental is temporary; but if it be his intent not to again so use it, then it is permanent; and this is so without reference to the length of time covered by the rental contract."[6] *Houston Chronicle Pub. Co. v. Allen*, 70 S.W.2d 482, 484 (Tex. Civ. App.—Beaumont 1934, no writ). Where surrender of use and occupancy of homestead property to tenant is with intent that property shall not

---

[6] Appellants note that the trial court was also mistaken when it alleged in the Interlocutory Judgment that "the 'intent' element is a creature of the initial attachment of the homestead designation, and is not something that fluctuates or goes away, thereby destroying the homestead nature of the property." The case law clearly indicates that there in an 'intent' element applied when determining whether a lease was temporary or permanent.

again be used as homestead, abandonment is complete, though term covered by rental contract is for short period of time. *Id.*

Since the instruction of 'temporary renting' was included in the Charge - and not objected to by Appellees - it is clear that the issue of whether Appellees abandoned their alleged homestead by moving to Chicago and continuously leasing it to tenants was tried by consent. Therefore, the trial court erred when it disregarded Question 2 and determined that whether Appellees abandoned their homestead was not tried by consent. The judgment should be reversed and this Court should render a new judgment that accurately reflects the jury's findings -- that 314 Goldenrod was not Appellees' homestead on March 4, 2014.

> **d.** **Appellees did not preserve error by either objecting to the evidence, objecting to the jury charge, or objecting to the jury findings regarding whether 314 was Appellees' homestead in 2014, therefore, any objections were waived.**

The trial court should not have disregarded Question 2 because Appellees failed to preserve error by objecting to it on any ground including, but not limited to, *fault in pleading. Ingram,* Supra.; *Sage Street,* Supra. Furthermore, Appellees did not object during the trial when testimony was elicited from a witness about whether 314 Goldenrod was Appellees' homestead in 2014, whether Appellees had an intent to return to 314 Goldenrod in the future, or the temporary/permanent leasing of 314 Goldenrod. Failure to object to testimony at the time of introduction or at any other time during the trial is fatal. TEX.R.EVID. 103(a)(1). "In order to

preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion ...” *Clark v. Trailways, Inc.*, 774 S.W.2d, 644, 647 (Tex.1989). The evidence in the reporter's record shows that all parties presented evidence regarding abandonment without objection and that the defense was tried by consent of all parties; therefore, it was not waived and was properly decided by the jury.

### 1.    Appellees had no objection to the testimony.

There was no evidence in the record that would indicate Appellees challenged the admission of evidence or testimony regarding Appellees' abandonment, intent to return, or their rental of 314 Goldenrod, therefore any argument that abandonment was not tried by consent is waived. If - according to the trial court - intent only applies to the initial attachment of the homestead designation, Plaintiffs should have objected to all testimony regarding the designation of the property after it was *initially dedicated* as Plaintiffs' homestead in 1994. **After all, any testimony elicited after Appellees testified regarding the alleged initial dedication of the homestead would have not been relevant unless whether Appellees intended to abandon their alleged homestead was at issue.**[7] The record shows that no such objections were made. Appellees clearly did

---

[7]  Please note that there was no testimony regarding when Appellees initially moved into 314 Goldenrod in order to "occupy" it. Therefore, there was no evidence presented to the jury regarding "occupancy," which is a required element in order to establish homestead.

not object to any testimony regarding their alleged 'intent to return' or lack of 'intent to return' as it was in their direct testimony and no objection was asserted. Likewise, Appellees did not object to any testimony about the leasing of 314 Goldenrod to Brandi Brown, and others -- which also goes directly to whether Appellees abandoned their homestead after they moved to Chicago in 2006.

**2.        Appellees had no objections to the Jury Charge.**

In fact, Question 2 was proposed by Appellees in their Proposed Jury Charge. C.R. at 52. In fact, the title of that proposed question was "Continuing Homestead". *Id.* When asked by the Court: "All right. Moving on to Question 2. Plaintiff, any objection?" Appellees' responded: "No, Your Honor, we have no objections to Question 2 or the instructions." R.R. 2 at 122.  It is well settled in this State that where no objection is made to a defective submission of a controlling issue constituting a component element of a ground of recovery or a defense . . . failure to object is considered as a waiver of the defective submission of such issue.  The applicable rule is Rule 274 of the Texas Rules of Civil Procedure, which states in part:

> A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or *fault in pleading*, is waived unless specifically included in the objections.

54

Tex. R. Civ. P. 274. (*emphasis added*); *see also Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994); *Aero Energy, Inc. v. Circle Drilling Co.,* 699 S.W.2d 821, 822 (Tex. 1985); *Allen v. American Nat'l Ins. Co.,* 380 S.W.2d 604, 609 (Tex. 1964). This rule is largely the restatement of a statutory provision in existence at the time the Rules of Civil Procedure went into effect. In discussing the practice, Chief Justice McClendon, speaking for the Austin Court of Civil Appeals in *Panhandle & Santa Fe Ry. Co. v. Friend*, 91 S.W.2d 922, no wr., (1936), said:

> 'Where, however, the ground (of recovery or defense) is submitted, however erroneously or incompletely, the parties are thereby put upon notice that the jury's answers to the issues actually submitted will form the basis of the court's judgment thereafter to be rendered thereon. It then becomes the duty of each party to point out errors of omission or commission, or be held estopped from thereafter urging them.' (Italics supplied.)

*Panhandle & Santa Fe Ry. Co. v. Friend*, 91 S.W.2d 922, 930 no wr., (1936). Therefore, this Court should not have disregarded the jury's finding to jury question number 2, as it was properly submitted, not objected to, and ample evidence was presented at trial to support the jury's finding on it. Clearly, Appellees were put upon notice that the jury's answers to the issues actually submitted would form the basis of the court's judgment. Their failure to object to its submission should have been deemed a waiver by the trial court. *Allen v. American National Insurance Company,* 380 S.W.2d 604, 609 (Tex. 1964) (where

55

no objection is made to a defective submission of a controlling issue constituting a component element of a ground of recovery or a defense and a judgment is rendered thereon, such judgment will not be reversed because the failure to object is considered as a waiver of the defective submission of such issue). Because the Appellees failed to object to Question 2, the trial court should not have disregarded it on the ground that it is immaterial, that it goes to an alleged unpled issue or defense, or for any other reason, per Rule 274 of the Texas Rules of Civil Procedure.

**3.     There were no objections to the Jury's finding in Question 2.**

Likewise, Appellees did not object to the jury's finding in Question 2 before the jury was discharged. Texas courts have held that an objection to conflicts in the jury's answers must be made before the jury is discharged to preserve the issue for appeal or that objection is waived. *Sears, Roebuck & Co. v. Kunze,* 996 S.W.2d 416, 423 (Tex.App.-Beaumont 1999, writ denied); *Roling v. Alamo Group (USA), Inc.,* 840 S.W.2d 107, 110 (Tex.App.-Eastland 1992, writ denied); *see also* TEX. R. CIV. P. 295 (authorizing trial court to direct jury to reform judgment if questions are in conflict). Additionally, taking one or more of those steps is the only way Appellees could have preserved their challenge or given notice to the trial court (or appellate court) that they challenge the jury's finding. *Cecil v. Smith*, 804 S.W.2d 227, 231 (Tex. Civ. App – Amarillo 1940, writ dism'd judgmt. cor.); *Neller v.*

56

*Kirschke,* 922 S.W.2d 182, 187 (Tex. App. – Houston [1st Dist.] 1995, writ denied). Because Appellees made no objections during trial, the Charge Conference, before the jury was discharged, or in any post-judgment pleadings, the trial court erred in disregarding jury question number 2, as the issue of abandonment was obviously tried by consent.

Because the abandonment issue was on the face of both parties' pleadings at the time of trial, the fact that the evidence was presented at trial regarding 'intent to return' and whether 314 Goldenrod was allegedly temporarily leased when Appellees moved to Chicago, Appellees' lack of objections to the abandonment evidence at any time, a reversal of the trial court's Interlocutory Judgment is necessary. Thereafter, this Court should render a verdict that comports with the jury's finding, that 314 Goldenrod was not the homestead of Appellees when it was executed on in 2014.

### C. The trial court erred in disregarding the jury's finding on question number 2, as it was material.

#### i. Standard of Review

When a trial court's ruling to disregard a finding is based on a legal conclusion, the appellate court's review is de novo. *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) *Compass Bank v. MFP Fin. Services, Inc.*, 152 S.W.3d 844, 854 (Tex. App.—Dallas 2005, pet. denied). A jury finding is immaterial only if the question

should not have been submitted or if the question, though properly submitted, was rendered immaterial by other findings. *Salinas v. Rafati,* 948 S.W.2d 286, 288 (Tex. 1997); *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994) (citing *C & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966)). Therefore, the review of the trial court's disregard of the jury finding as immaterial is de novo.

ii.      **The record shows that the jury's finding was material, thus the trial court erred in disregarding jury's finding to question number 2 as immaterial.**

The appellate court should reverse the trial court's Interlocutory Judgment and render a verdict that reflects the jury's finding in Question 2 because a *de novo* review of the pleadings and the evidence presented at trial shows that whether 314 Goldenrod was Appellees' homestead on March 4, 2014 when the execution took place was material. *See* Testimony Chart in Subsection B herein. Question 2 was not only material, it went to the heart of the dispute. A fact is "material" if it affects the ultimate outcome of the lawsuit under the governing law. *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.,* 260 S.W.3d 529, 534 (Tex. App.-Tyler 2008, pet. denied); *Pierce v. Wash. Mut. Bank,* 226 S.W.3d 711, 714 (Tex. App.-Tyler 2007, pet. denied).

This Court should follow the Supreme Court when it ruled, in *Spencer v. Eagle Star Inc. Co. of Am.,* that a jury question was material because "it was the

58

heart of the Spencers' case." *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994). In *Spencer,* the Supreme Court ultimately found that since the jury question at issue was material, the trial court could not disregard the jury's answer and render judgment notwithstanding the verdict. In the present case, and by virtue of Appellees' pleadings, their testimony, and the fact that they submitted Question 2, without objection, everyone knew that the material issue to be decided by the jury is if 314 Goldenrod was the Appellees' homestead on March 4, 2014. In fact, Appellees' opening statement admitted that is the issue when counsel told the jury that their job is to clarify whether 314 Goldenrod *is* Appellees' homestead. R.R. 2 at 6. Counsel did not ask the jury to find that 314 Goldenrod *was* Appellees' homestead in 1994 because the execution took place in 2014! Simply put, the issue to be decided was not whether 314 Goldenrod was their homestead in December of 1994. **Because jury question number 2 goes to the heart of the declaratory judgment action, it should not have been found to be immaterial by the trial court.**

The *Spencer* Court found that there are only three instances where a question can be found to be immaterial:

1. It should not have been submitted;

2. When it was properly submitted but has been rendered immaterial by other findings; or

59

3. When it calls for a finding beyond the province of the jury, such as a question of law.

*Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). The Supreme Court has also held that a question may be immaterial if the finding is found elsewhere in the verdict or cannot change the verdict's effect. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995). Courts have typically found that jury answers are immaterial when a predicate question renders a later finding immaterial. For example:

> - a question negating liability makes a damage finding immaterial;
>
> - a statute or law precludes a finding on an issue;
>
> - an affirmative defense vitiates a finding of liability, e.g. ratification renders finding of fraud immaterial;
>
> - an affirmative answer on an alternate theory of relief renders a negative answer on another theory immaterial;
>
> - answers on general questions are disregarded in favor of specific answers; and finally,
>
> - a finding may be immaterial if not pled or tried by consent and the question was properly objected to before being submitted to the jury.

*See e.g. Cambio v. Briers*, 2015 WL 2229274, at 3 (Tex. App.—Houston [1st Dist.] May 12, 2015, no. pet. h.) (*holding* answer on questions on predicate questions rendered following questions immaterial); *see also Billy Smith Enterprises, Inc. v. Hutchison Const., Inc.*, 261 S.W.3d 370, 377-78 (Tex. App.— Austin 2008, pet. dism'd) (*holding* that finding of violation of 'Prompt Pay Act'

was immaterial if no money was owed); *see also Silvio v. Boggan*, 01-10-00081-CV, 2012 WL 524420, at *3-4 (Tex. App.—Houston [1st Dist.] Feb. 16, 2012, pet. denied) (*holding* finding that deed was valid made question regarding consideration immaterial); *see also Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (*holding* court may disregard finding of duty of good faith if there is a finding of agency as both established a fiduciary relationship); *see also Allied Mgmt. Corp. v. Houston Poly Bag, Inc.*, 01-88-00643-CV, 1989 WL 66200, at 3-4 (Tex. App.—Houston [1st Dist.] June 8, 1989, no writ) (*holding* that court may disregard finding negating estoppel when jury found failure to timely perform because failure to timely perform is specific while estoppel is general); *see also Coombs v. Fazzio*, 386 S.W.2d 650, 653 (Tex. Civ. App.—San Antonio 1965), *writ refused NRE* (Apr. 28, 1965) (*finding* court may disregard where submission *was objected to* before sent to jury and therefore not pled or tried by consent).

The record shows that none of the above examples occurred in this case. To the contrary, Question 2 goes directly to the dispute, which is: Was 314 Goldenrod the Noriega's homestead when the execution took place on March 4, 2014? Because this was, arguably, the only issue being tried, it is axiomatic that whether Appellees' abandoned their alleged homestead when they moved to Chicago was obviously an issue. Not only that, but the abandonment issue was present in the

61

parties' pleadings, was part of Plaintiffs' opening statement, was repeatedly referred to by both parties in the evidence throughout trial, was testified to by the Appellees and was part of the submission to the jury in both of the instructions (through the instruction of temporary rental and by Question 2 regarding the status of the homestead in 2014). *See* Testimony Chart in Section B herein. The jury definitively and correctly answered this question in the negative and such finding was dispositive in this case.

### a. The pleadings and the evidence at trial supported the findings in Question 2.

Because the pleadings and the evidence presented at trial support the jury's findings in Question 2, the trial court should have read the two jury questions consistently with one another, rather than disregarding Question 2. *Wang v. Gonzalez*, 2013 WL 174576, at 8 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013, no pet.).

In *Wang v. Gonzalez*, this Court dealt with a trial court's Judgment Notwithstanding the Verdict ("JNOV") regarding two jury questions that pertained to the ownership of an excavator. Question Number One asked, "Did [Wang] have an agreement with Jose Gonzalez for Jose Gonzalez to retain ownership of the excavator in question after completion of the demolition of [Wang's] motels?" The jury answered "no." Question Number Eleven asked the jury to determine the percentage of Wang's and Gonzalez's respective ownership interests in the

excavator. The jury responded "50%" for each party. Wang moved for a JNOV on the grounds that the jury's answer to Question 1 made their answer to Question 11 immaterial. The trial court disagreed, as did this Court. In doing so, this Court determined that since it was possible for the jury's answers to these two questions to be read consistently with each other, the trial court was correct in not disregarding the jury's findings. In support of its determination, this Court relied on *Shamoun v. Shough,* which held "[W]e may not strike down jury answers on the basis of conflict if there is any reasonable basis on which they can be reconciled." *See Shamoun v. Shough,* 377 S.W.3d 63, 69 (Tex.App.-Dallas 2012, pet. denied). On this issue, this Court ultimately concluded that, "because some evidence supported the jury's finding... the trial court properly denied Wang's motion for JNOV concerning this finding." *See Cherokee Water Co. v. Freeman,* 145 S.W.3d 809, 813 (Tex. App.—Texarkana 2004, pet. denied); *Trinity Indus., Inc. v. Ashland, Inc.,* 53 S.W.3d 852, 863 (Tex. App.—Austin 2001, pet. denied); and *Wang,* 2013 WL 174576 at 7.

In the present case, no JNOV, motion to set aside, or motion for new trial was filed. In fact, review of the record reveals that all of the parties were satisfied with the jury's findings. Because no objections were raised or post-judgment motions filed, the effect of the trial court's disregard of a material jury finding is akin to a *sua sponte* JNOV. If the trial court found any inconsistency with the

63

jury's answers to Question 1 and Question 2, it could have certainly reconciled the two questions with one another, as the trial court (and this Court) did in *Wang,* by determining that 314 Goldenrod may have been Appellees' homestead in December of 1994, but that it ceased being their homestead in 2014 because Appellees abandoned the homestead by moving to Chicago with no immediate intent to return and/or by continuously leasing 314 Goldenrod to tenants.

The conclusion that Question 2 was material is inevitable by a simple review of the record in this case. From early on in the lawsuit, Appellees made certain that Question 2 had a logical connection with the consequential facts to their case. On a *de novo* review of the pleadings, the testimony at trial, and the evidence presented to the jury, this Court should find that Question 2 was material and should not have been disregarded. Therefore, this Court should reverse the Interlocutory Judgment and render a declaratory judgment that declares 314 Goldenrod to not be Appellees' homestead on March 4, 2104 on the basis that Question 2 was material and should not have been disregarded.

**D.    The trial court erred in submitting Question 1 to the Jury.**

**i.    Standard of Review.**

Submission of questions to the jury is a matter within the discretion of the trial court. *Cole v. Crawford,* 69 Tex. 124, 5 S.W. 646, 648 (1887); *Ked-Wick Corp. v. Levinton,* 681 S.W.2d 851, 855 (Tex. App. – Houston [14th Dist.] 1984, no

64

writ). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,*701 S.W.2d 238, 241–42 (Tex.1985);   A trial court has wide discretion in submitting instructions and jury questions. *Id.* This discretion is subject only to the requirement that the questions submitted must (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination. TEX.R. CIV. P.277 and 278; *Moore v. Kitsmiller*, 201 S.W.3d 147, 153 (Tex. App. – Tyler 206, pet. denied) ; *see also Shupe,* 192 S.W.3d at 579 ("When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict.").

## ii.    Question 1 was not a controlling question.

The trial court erred in submitting Question 1 to the jury because it was not supported by the pleadings and, thus, was not a controlling question. Trial courts are required to submit the controlling questions raised by the pleadings and the evidence, and once the controlling questions have been submitted, does not err in refusing to submit other questions and various shades of the same question. *Sinko v. City of San Antonio,* 702 S.W.2d 201, 208 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); TEX.R.CIV.P. 278. Under TEX.R.CIV.P. 277 and 279, all parties are

entitled to have controlling issues that are raised by the written pleadings *and* evidence submitted to the jury. *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.)(emphasis added). A controlling question is one which, if answered favorably on the theory in which it is presented, will support a basis for judgment for the proponent of the issue. *Gomez v. Franco,* 677 S.W.2d 231, 234 (Tex.App.—Corpus Christi 1984, no writ). Whether 314 Goldenrod was Appellees' homestead in 1994 had no bearing on the declaratory judgment action. Therefore, the answer to Question 1, alone, could not have formed the basis for the declaratory judgment, as plead by Appellees.

The only issue that was to be decided by the jury at trial was the declaratory judgment issue, which asked the trial court to declare 314 Goldenrod, Houston, Texas as Appellees' homestead, thus exempt from seizure and execution. C.R. at 14 (Paragraph 34). Despite the lack of support in the pleadings, the trial court submitted Question 1, which asked whether 314 Goldenrod was Appellees' homestead in December of 1994. C.R. at 59. Furthermore, it would not have mattered the status of 314 Goldenrod in 1994, as the property was not executed on until 2014! As evidenced by the reporter's record in this case, a lot can happen in 20 years. Since the declaratory judgment action was not filed until 2014, whether 314 Goldenrod was Appellees' homestead in 1994 would not have controlled the outcome of the declaratory judgment action. The controlling question posed to the

66

jury is found in Question 2, which asked whether 314 Goldenrod was Appellees' homestead on March 4, 2014, the date that Appellants executed on it.

Appellants properly objected to Question 1, during the Charge Conference, by objecting to the ground that:

> "Yes, Judge, we have an objection to Question No. 1 as this declaratory judgment action that was tried today was always expressed by Counsel and by the Court that this case would be regarding whether or not 314 Goldenrod, Houston, Texas 77009 was the Noriegas' homestead on March 4th, 2014. This was not a declaratory judgment to declare whether it was their homestead in December of 1994. Therefore, this question is improper and it's misleading to the jury. And I'm at a loss as to what the Court is planning to do with this question once it's answered. As for the -- there's no basis in law or fact for this question." R.R. 3 at 120.

The trial court overruled the objection. R.R. 3 at 122. Because declaring 314 Goldenrod as Appellees' homestead was not raised by the pleadings and could not have determined the declaratory judgment action, as plead, it was abuse of discretion for the question to be submitted to the jury. *Johnson v. Whitehurst*, 952 S.W.2d 441, 449 (Tex.App. - Houston [1st Dist.], writ ref;d n.r.e.).

### iii. The homestead status of 314 Goldenrod in 1994 was not in dispute.

While the homestead status of 314 Goldenrod when Appellees purchased it in 1994 may have been relevant to proving the initial homestead status of the property, that issue was most definitely not the ultimate issue in dispute. After all,

67

even if Question 1 were the only issue submitted to the jury, the trial court still could not have declared 314 Goldenrod as Appellees' homestead in 2014, when the declaratory judgment action was filed because 'homestead' is a fact issue for a jury to decide. Appellees brought the claim for declaratory relief on the grounds that the execution sale to Appellants should be set aside, as 314 Goldenrod is their homestead.[8] C.R. at 14. As the execution sale took place on March 4, 2014, it is axiomatic that March 4, 2014 is the crucial date for which Appellees need to have 314 Goldenrod declared as a homestead! Therefore, the trial court erred in submitting Question 1 to the jury, as the homestead status of 314 Goldenrod in 1994 was not in dispute.

### iv. The trial court's submission of Question 1 to the jury caused the rendition of an improper judgment.

Because, in the judgment, the trial court chose to consider the jury's finding in Question 1 and disregard the jury's finding in Question 2, the submission of Question 1 clearly caused the rendition of an improper judgment. Therefore, the judgment should be reversed. Furthermore, since Question 2 was properly submitted, was not objected to, goes to the heart of the dispute, and is dispositive,

---

[8] It is to be noted that while Appellees appear to contend that a court is permitted to set aside a sale in a declaratory judgment action, Appellants have found no statute or case law to support this theory of recovery. To the contrary, the Declaratory Judgment Act was designed to permit courts to declare rights, status, and other legal relations. *See* TEX.CIV. PRAC & REM. CODE §37.002(b). It appears that a cause of action to set aside the execution sale would have needed to be filed in order to set aside the sale of 314 Goldenrod. No such cause of action was filed. Furthermore, no such cause of action was tried to the jury. Therefore, the cause of action was waived.

this Court should render a judgment declaring that 314 Goldenrod was not Appellees' homestead when it was executed on in 2014.

## E. The trial court erred by not issuing a final judgment.

### i. Standard of Review

A trial court's failure to render a final judgment is reviewed as an abuse of discretion. *In re Educap, Inc.*, 2012 WL 3224110, at *3 (Tex. App.—Houston [1st Dist.] Aug. 7, 2012, no pet.).

### ii. The trial court erred by not issuing a final judgment after the merits of the case had been tried to a jury and the jury rendered a verdict.

The trial court erred by issuing an interlocutory judgment in an apparent attempt to keep the cause of action for wrongful execution alive, though it was waived by Appellees. Importantly, the trial court impliedly admitted its error when it attempted to make the interlocutory judgment final by signing a *sua sponte* post trial severance of the wrongful execution action. C.R. at 150 - 151. Had the cause of action been properly severed or bifurcated before the trial, this measure would not have been needed. The fact of the matter is that wrongful execution was on the live pleadings at time of trial and the record shows no motion to bifurcate or - more importantly - no orders severing/bifurcating it before trial commenced and the jury rendered its verdict. Further, the record is clear that Appellees waived this cause of action by failing to pursue it at trial or by seeking a finding from the jury regarding

69

wrongful execution. Accordingly, the cause of action for wrongful writ of execution was waived by Appellees and the court should have issued a final judgment instead of an interlocutory judgment.

### a. Wrongful writ of execution was waived by Appellees.

Because all issues were either tried or waived, the Judgment should have been final, not interlocutory. Thus, the trial court erred in the Interlocutory Judgment when it stated: "Plaintiffs further wish to go forward on a claim for damages for wrongful execution, which the Court will likely permit, subject to any dispositive motions on that subject by Defendants." C.R. at 111.

During the Charge Conference, Appellees even discussed the wrongful execution cause of action when their counsel stated that the "wrongful execution in the supplemental petition was filed in July. So the declaratory judgment action was filed before the TI was issued and before the cause of action seeking damages was filed." R.R. 3 at 126. After acknowledging the cause of action, Appellees failed to propose a question on it. C.R. at 100-107. Furthermore, during trial, when Appellants attempted to call their previous counsel, Natalie Barletta to the stand to testify regarding the wrongful execution claim (the steps she took to ensure 314 Goldenrod was not the Appellees' homestead before executing on it), Appellees objected. R.R. 3 at 109-116. Counsel for Appellees stated: "So everything Ms. Barletta did was to pursue execution on that judgment. And these are the

70

documents that Ms. Robak had that I objected to that are the writ of execution and the notices and the constable's deed and so forth. All of that has to do with the underlying judgment, which is -- I mean, it hadn't come in. It's not appropriate... " R.R. 2. at 110-111.

The general rule is that the plaintiff has the burden to obtain affirmative answers to jury questions as to the necessary elements of his cause of action. TEX. R. CIV. P. 279; *Ramos v. FritoLay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990); *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991). If an entire theory is omitted from the charge, that theory of recovery is waived. *Strauss v. La Mark,* 366 S.W.2d 555, 557 (Tex. 1963). The record shows no motion or order to bifurcate the cause of action for wrongful writ of execution prior to the verdict being rendered. Furthermore, Appellees did not submit a question to the jury on this issue which was pled, and the jury did not determine the claim of wrongful writ of execution. C.R. at 100-107. Respectfully, the trial court may not now determine damages on a cause of action properly pled for but not submitted to the jury. The Interlocutory Judgment should be reversed and a final judgment e rendered in favor of Appellants that the claim for wrongful writ of execution is denied as waived by Appellees.

**b. The trial court's actions have created piecemeal trial, which is prohibited.**

The law is clear that because Plaintiffs did not submit a jury question regarding wrongful writ of execution, they waived that claim. Permitting this case to go on *after* a jury trial would be against the long standing policy and practice against "piecemeal trials." *Iley v. Hughes,* 311 S.W.2d 648, 651 (1958). The Supreme Court recognizes that the term 'piecemeal' is defined as "one piece at a time; in pieces or fragments; or done, made or accomplished piece by piece, or in a fragmentary way." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30, n. 29. (Tex. 1994)(citing Webster's Ninth New Collegiate Dictionary (1988)). The trial court's issuance of an interlocutory judgment after a trial on the merits had been conducted (and no bifurcation or severance order had been issued pre-trial) is prohibited, or it would amount to a piecemeal trial.

In *Iley,* the Supreme Court said: "[T]he public interest, the interests of litigants and the administration of justice [are] better served by rules of trial which avoid a multiplicity of suits." *Id.* Rule 174b allows a separate trial to avoid prejudice (so usually on the issue of punitive damages). However, in the instant case, there was no motion and no allegation of prejudice, to support a separate/severed/bifurcated trial. The Supreme Court, in *Transportation Ins. Co. v. Moriel,* stated that although it remained resolute that piecemeal trials should be avoided, punitive damage cases should be the exception to the rule. *Transportation*

72

*Ins. Co. v. Moriel*, 879 S.W.2d at 30, n. 29. The present case is not a punitive damages case; therefore the *Moriel* exception does not apply. Furthermore, without any motion or order, there was no way Appellants could have been put on notice before trial, or provided with an adequate opportunity to respond, to the wrongful execution claim being tried separately (and pursuant to a separately signed order to bifurcate). The actions of the trial court in, *sua sponte*, ordering that the Appellants try the merits of this case more than once, without notice or good cause - needlessly increasing their cost in attorney fees - is abuse of discretion. Thus, the Interlocutory Judgment should be reversed and rendered to be a final judgment.

### F. The trial court erred by severing the wrongful execution claim from the Judgment after trial.

In an apparent attempt to remedy the mistake made by signing an interlocutory judgment after a trial on the merits, the trial court severed the cause of action for wrongful writ of execution after trial. In doing so, the trial court apparently ignored the fact that no motion to bifurcate the wrongful execution claim was ever filed, no order bifurcating or severing wrongful execution was ever signed, and Appellees waived this cause of action by not submitting a jury question on it. Even further, no post-verdict motions were filed requesting any relief regarding the waiver of the wrongful execution claim. The court erred because severing a case after it has gone to a jury is prohibited, pursuant to Rule 41 of the Texas Rules of Civil Procedure. In particular, Rule 41 provides as follows:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added, or suits filed separately may be consolidated, or actions which have been improperly joined may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, *before the time of submission to the jury or to the court if trial is without a jury,* on such terms as are just. Any claim against a party may be severed and proceeded with separately.

TEX. R. CIV. P. 41(emphasis added). Therefore, since the *sua sponte* severance took place after the time of submission to the jury, this Court should find that the trial court erred. The severance should be disregarded by this Court and a final judgment that provides a ruling that wrongful execution was waived in the jury trial should be rendered by this Court.

## G. The trial court erred when it awarded damages to Appellees.

The trial court erred by issuing damages/specific performance when the jury verdict did not award damages. Simply put, the pleadings related to the declaratory judgment action only, and asked the trial court to declare 314 Goldenrod as Appellees' homestead. *See* Paragraphs 34 and 41 of Plaintiffs' First Amended Petition. C.R. at 15. No suit to set aside an execution sale was filed or, more importantly, presented to a jury. See, e.g., *Inman v. Orndorff*, 596 S.W.2d 236, 238 (Tex. Civ. App. – Houston [1st Dist.] 1980, no writ), *Prudential Corp. v. Bazaman*, 512 S.W.2d 85, 91 (Tex. Civ. App. – Corpus Christi 1974, no writ); *Green v. Watson,* 860 S.W.2d 238, 244 (Tex. App. – Austin 1993, no writ) (op. on reh'g).

74

Because no suit to set aside execution sale was filed, no jury questions regarding damages were submitted to the jury, and that issue clearly was not tried by consent (as no testimony regarding actual damages or specific performance was offered by Appellees), awarding damages and/or specific performance was an abuse of discretion by the trial court. Texas Rule of Civil Procedure 300 states:

> The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. TEX.R.CIV.PRO 300.

While the pleadings do pray for the court to set aside the sale of 314 Goldenrod, the only cause of action that was pled for by Appellees that could have awarded actual damages or specific performance was the wrongful execution claim, which was waived. The case presented to the jury was not regarding the setting aside of an execution sale. The only case presented to the jury was the declaratory judgment action regarding whether 314 Goldenrod is Appellees homestead. Therefore, other than declaring that 314 Goldenrod was not Appellees' homestead when it was executed on in 2014, there was nothing else to do. Declaring that 314 Goldenrod is not Appellees' homestead is where the trial court should have stopped. A declaratory judgment is a remedial action that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relations. TEX. CIV. PRAC & REM. CODE ANN. § 37.002 (Vernon

75

2008); *Tucker v. Graham Green v. Watson,* 860 S.W.2d 238, 244 (Tex. App. – Austin 1993, no writ) *Green v. Watson,* 860 S.W.2d 238, 244 (Tex. App. – Austin 1993, no writ). Thus, "a court of record, within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief could be claimed." TEX. CIV. PRAC & REM. CODE ANN. § 37.003(a) (Vernon 2008). A declaratory judgment is not available to settle legal disputes already pending before the court. *BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990). As such, every ruling after the declaration regarding the homestead status of 314 Goldenrod was erroneous, as the Appellees did not pursue their wrongful writ of execution cause of action that allowed for damages or file a suit to set aside the execution sale.

Instead, the trial court stated, in the Interlocutory Judgment, that "Next, with respect to whether the Plaintiffs must now sue for the fair market value of the home after the writ of execution sale, or may have the home returned, the Court believes they are entitled to the return of the home." C.R. at 67. With all due respect to the trial court, there was no trial on wrongful execution, no suit to set aside the execution sale pled, no plea for damages under TEXAS CIVIL PRACTICE AND REMEDIES CODE § 34.022, and no other cause of action presented to the jury that would have awarded possession of 314 Goldenrod and all future rental payments to Appellees. Even further, no liability was found by the jury that could

76

have awarded damages. Going beyond the suit for declaratory judgment, and issuing a judgment awarding damages to Appellees, was a clear abuse of discretion. The damages awarded (setting aside the sale, handing over the deed, foregoing rental payments on the property) were all sought by Appellees in relation to the bill of review action or the wrongful writ of execution, both of which were not a part of the trial in this case. Because the trial court abused its discretion in awarding any damages, or in the nature of specific performance (handing the deed to 314 Goldenrod to Appellees) in the Interlocutory Judgment, this Court should reverse the trial court's finding that the sale of 314 Goldenrod is set aside. This is because 314 Goldenrod was not the homestead of the Appellees at the time of execution, March 4, 2014.

## H.    Conclusion

In conclusion, the trial court erred in finding that Question 2 was immaterial and should be disregarded. When a trial court has erred in entering a declaratory judgment, it is the appellate court's duty to render such judgment as the trial court should have rendered. *See Lone Star Gas Co. v. Railroad Commission of Texas,* 767 S.W.2d 709, 710 (Tex.1989); *NRG Exploration, Inc. v. Rauch,* 671 S.W.2d 649, 653 (Tex.App.—Austin, 1984, writ ref'd n.r.e.); *Tall Timbers Corp. v. Anderson,* 370 S.W.2d 214 (Tex.Civ.App.1963), rev'd on other grounds, 378 S.W.2d 16 (Tex.1964). It is clear from the record, the Texas Constitution, the

77

Supreme Court's mandates, the Texas Rules of Civil Procedure, and the case law cited herein, that the trial court erred in rendering judgment in favor of Appellees on the basis that abandonment was *not* tried by consent. Clearly, the pleadings, the testimony and other evidence at trial showed that whether 314 Goldenrod was Appellees' homestead on March 4, 2014 was material, as it went to the heart of the case. Appellees certainly knew it was an issue to be tried, as they anticipated it in their own pleadings. C.R. at 15. Furthermore, the issue was tried by consent of all parties, as evidence of Appellees' move to Chicago, the leasing of 314 Goldenrod while they live in Chicago, and their alleged 'intent to return' to 314 Goldenrod show that whether 314 Goldenrod remained their homestead was presented by all parties to the lawsuit, without objection. Lastly, the fact that the Appellees proposed Question 2 and did not object to its submission to the jury or the instruction about temporary renting shows that the issue was tried by consent.

Even further, this Court should find that the trial court erred in submitting Question 1 to the jury as it was not a controlling issue and was not supported by the pleadings or the law. The declaratory judgment action was not requesting that the trial court declare 314 Goldenrod as Appellees' homestead in 1994. The trial court was asked to declare 314 Goldenrod as Appellees' homestead when they filed the declaratory judgment, in 2014. Furthermore, the facts are clear that the declaration was sought after Appellants' executed on 314 Goldenrod on March 4,

2014. Therefore, the only way for Appellees to undo that execution was to have a court declare that, at the time of the execution, 314 Goldenrod was Appellees' homestead. Since Question 1 only asked whether 314 Goldenrod was Appellees' homestead in 1994, it was not controlling and should not have been submitted.

Additionally, this Court should find that the trial court erred in signing an interlocutory judgment, post-trial when no severance or bifurcation order had been signed before trial commenced. The record shows that wrongful execution was in the live pleadings at time of trial, and was thus, waived by Appellees' failure to present evidence or submit a question on wrongful execution to the jury. C.R. at 18-21. Furthermore, the record shows no severance or bifurcation of the wrongful execution case before trial commenced that would have justified the trial court's finding that the cause of action was not waived by Appellees. Simply put, the claim was not pursued by Appellees in the trial. Therefore, the trial court should have found that the claim was waived.

Lastly, this Court should reverse the trial court's finding that the sale of 314 Goldenrod is set aside on the grounds that it was not the homestead of Appellees at the time of execution. There was no liability question that would have given rise to damages or specific performance. The only claim pursued in the trial was the claim for declaratory judgment on whether 314 Goldenrod is Appellees' homestead. Therefore, other than declaring 314 Goldenrod was not Appellees' homestead -

79

there was nothing else to do. Going beyond the suit for declaratory judgment, by issuing a judgment awarding damages to Appellees, was a clear abuse of discretion. The damages awarded setting aside the sale, handing over the deed, foregoing rental payments on the property should be reversed, as the trial court abused its discretion. Furthermore, Appellees should be required to return the rental payments they have been receiving since January 1, 2015 to Appellants, as they are the owners of 314 Goldenrod and should have been receiving the payments but for the trial court's erroneous Judgment.

## VI. PRAYER

For all these reasons, Appellants, Elizabeth Lousteau and Brett Clanton prays that this Court reverse the Interlocutory Judgment and render a judgment finding that 314 Goldenrod was not Appellees' homestead on March 4, 2014 and that Appellees take nothing by way of their claim for wrongful execution, as no question on wrongful execution was submitted to the jury. TEX.R.APP.P. 43.2(c). Furthermore, upon reversing the judgment for damages, the Appellants pray that Appellees be ordered to remit all rental payments they received from the current tenant from December 22, 2014 to the date of the signing of the reversal to Appellants.[9] Appellants further pray that they be awarded their appellate costs -

---

[9] Please recall that even though Appellants filed numerous motions requesting that the trial court set a supersedeas bond, each motion was denied. Therefore, Appellants could not supersede the

including preparation costs for the clerk's record and the reporter's record -- that were incurred by Appellants pursuant to TEX.R.APP.P. 43.4.

Respectfully submitted,

CERSONSKY, ROSEN & GARCIA, P.C.

By: */s/ Marianne G. Robak*
    Marianne G. Robak
    mgrobak@law-crg.com
    State Bar: 24048508
    M. H. Cersonsky
    mhcersonsky@law-crg.com
    State Bar: 04048500
    1770 Saint James Place, Suite 150
    Houston, Texas 77056
    Telephone: (713) 600-8500
    Fax: (713) 600-8585

    Attorneys for Defendants,
    Elizabeth A. Lousteau and Brett Clanton

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record on this 27th day of August, 2015, as follows:

***Via electronic filing manager***
Sarahjane "SJ" Davidson Swanson
Swanson Law Firm, PLLC
310 Main, Ste. 201
Houston, TX 77056

    */s/ Marianne G. Robak*
    Marianne G. Robak

---

judgment during the pendency of this Appeal. To date, the amount of rental income lost is $11,200.00.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9, the undersigned hereby certifies that, upon reliance of the word count of the computer program used to generate the document, the word count for all sections, excluding the caption, identity of the parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of the issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certificate, certificate of compliance and appendix is: 20,168.

*Marianne G. Robak*
Marianne G. Robak

## APPENDIX

| TAB | STATUTE |
|-----|---------|
| 1 | Vernon's Ann. Texas Consti. Art. 1, § 15 |
| 2 | TX Rules of Civil Procedure, Rule 41 |
| 3 | TX Rules of Civil Procedure, Rule 67 |
| 4 | TX Rules of Civil Procedure, Rule 274 |
| 5 | TX Rules of Civil Procedure, Rule 278 |
| 6 | TX Rules of Civil Procedure, Rule 279 |
| 7 | TX Rules of Civil Procedure, Rule 295 |
| 8 | TX Rules of Civil Procedure, Rule 300 |
| 9 | V.T.C.A., Civil Practice & Remedies Code § 34.022 |
| 10 | V.T.C.A., Civil Practice & Remedies Code § 37.002 |
| 11 | V.T.C.A., Civil Practice & Remedies Code § 37.003 |
| 12 | V.T.C.A., Property Code § 41.005 |
| 13 | TX Rules of Evidence, Rule 103 |
| 14 | TX Rules App. Proc., Rule 43.2 |
| 15 | TX Rules App. Proc., Rule 43.4 |

# TAB 1

## § 15. Right of trial by jury
Currentness

Sec. 15. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency. Provided, that the Legislature may provide for the temporary commitment, for observation and/or treatment, of mentally ill persons not charged with a criminal offense, for a period of time not to exceed ninety (90) days, by order of the County Court without the necessity of a trial by jury.

**Credits**

Amended Aug. 24, 1935.

TAB 2

## Rule 41. Misjoinder and Non-Joinder of Parties

Currentness

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added, or suits filed separately may be consolidated, or actions which have been improperly joined may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are just. Any claim against a party may be severed and proceeded with separately.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by order of March 31, 1941, eff. Sept. 1, 1941.

TAB 3

## Rule 67. Amendments to Conform to Issues Tried Without Objection

Currentness

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of questions, as is provided in Rules 277 and279.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of March 31, 1941, eff. Sept. 1, 1941; April 24, 1990, eff. Sept. 1, 1990.

# TAB 4

## Rule 274. Objections and Requests

Currentness

A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. When the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable. No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only.

## Credits

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of Sept. 20, 1941, eff. Dec. 31, 1941; July 15, 1987, eff. Jan. 1, 1988.

# TAB 5

## Rule 278. Submission of Questions, Definitions, and Instructions

Currentness

The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence. Except in trespass to try title, statutory partition proceedings, and other special proceedings in which the pleadings are specially defined by statutes or procedural rules, a party shall not be entitled to any submission of any question raised only by a general denial and not raised by affirmative written pleading by that party. Nothing herein shall change the burden of proof from what it would have been under a general denial. A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party. Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

**Credits**

July 15, 1987, eff. Jan. 1, 1988.

**Editors' Notes**
**COMMENT--1988**
Formerly a part of Rule 279.

# TAB 6

## Rule 279. Omissions From the Charge

<u>Currentness</u>

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of March 31, 1941, eff. Sept. 1, 1941; July 15, 1987, eff. Jan. 1, 1988; Dec. 16, 1987, eff. Jan. 1, 1988.

# TAB 7

# Rule 295. Correction of Verdict

## Currentness

If the purported verdict is defective, the court may direct it to be reformed. If it is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations.

## Credits

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by order of July 15, 1987, eff. Jan. 1, 1988.

TAB 8

## Rule 300. Court to Render Judgment

Currentness

Where a special verdict is rendered, or the conclusions of fact found by the judge are separately stated the court shall render judgment thereon unless set aside or a new trial is granted, or judgment is rendered notwithstanding verdict or jury finding under these rules.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941.

TAB 9

## § 34.022. Recovery of Property Value After Sale

Currentness

(a) A person is entitled to recover from the judgment creditor the market value of the person's property that has been seized through execution of a writ issued by a court if the judgment on which execution is issued is reversed or set aside but the property has been sold at execution.

(b) The amount of recovery is determined by the market value at the time of sale of the property sold.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

TAB 10

## § 37.002. Short Title, Construction, Interpretation

Currentness

(a) This chapter may be cited as the Uniform Declaratory Judgments Act.

(b) This chapter is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.

(c) This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees.

# TAB 11

## § 37.003. Power of Courts to Render Judgment; Form and Effect

Currentness

(a) A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for.

(b) The declaration may be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree.

(c) The enumerations in Sections 37.004 and 37.005 do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

# TAB 12

Effective: January 1, 2000

V.T.C.A., Property Code § 41.005

## § 41.005. Voluntary Designation of Homestead

Currentness

(a) If a rural homestead of a family is part of one or more parcels containing a total of more than 200 acres, the head of the family and, if married, that person's spouse may voluntarily designate not more than 200 acres of the property as the homestead. If a rural homestead of a single adult person, not otherwise entitled to a homestead, is part of one or more parcels containing a total of more than 100 acres, the person may voluntarily designate not more than 100 acres of the property as the homestead.

(b) If an urban homestead of a family, or an urban homestead of a single adult person not otherwise entitled to a homestead, is part of one or more contiguous lots containing a total of more than 10 acres, the head of the family and, if married, that person's spouse or the single adult person, as applicable, may voluntarily designate not more than 10 acres of the property as the homestead.

(c) Except as provided by Subsection (e) or Subchapter B, to designate property as a homestead, a person or persons, as applicable, must make the designation in an instrument that is signed and acknowledged or proved in the manner required for the recording of other instruments. The person or persons must file the designation with the county clerk of the county in which all or part of the property is located. The clerk shall record the designation in the county deed records. The designation must contain:

(1) a description sufficient to identify the property designated;

(2) a statement by the person or persons who executed the instrument that the property is designated as the homestead of the person's family or as the homestead of a single adult person not otherwise entitled to a homestead;

(3) the name of the current record title holder of the property; and

(4) for a rural homestead, the number of acres designated and, if there is more than one survey, the number of acres in each.

(d) A person or persons, as applicable, may change the boundaries of a homestead designated under Subsection (c) by executing and recording an instrument in the manner required for a voluntary designation under that subsection. A change under this subsection does not impair rights acquired by a party before the change.

(e) Except as otherwise provided by this subsection, property on which a person receives an exemption from taxation under Section 11.43, Tax Code, is considered to have been designated as the person's homestead for purposes of this subchapter if the property is listed as the person's residence homestead on the most recent appraisal roll for the appraisal district established for the county in which the property is located. If a person designates property as a homestead under Subsection (c) or Subchapter B and a different property is considered to have been designated as the person's homestead under this subsection, the designation under Subsection (c) or Subchapter B, as applicable, prevails for purposes of this chapter.

(f) If a person or persons, as applicable, have not made a voluntary designation of a homestead under this section as of the time a writ of execution is issued against the person, any designation of the person's or persons' homestead must be made in accordance with Subchapter B.

(g) An instrument that made a voluntary designation of a homestead in accordance with prior law and that is on file with the county clerk on September 1, 1987, is considered a voluntary designation of a homestead under this section.

### Credits

Added by Acts 1987, 70th Leg., ch. 727, § 1, eff. Aug. 31, 1987. Amended by Acts 1993, 73rd Leg., ch. 48, § 3, eff. Sept. 1, 1993;Acts 1993, 73rd Leg., ch. 297, § 1, eff. Aug. 1, 1993; Acts 1997, 75th Leg., ch. 846, § 1, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1510, § 3, eff. Jan. 1, 2000.

TAB 13

# Rule 103. Rulings on Evidence

Currentness

**(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:

**(1)** if the ruling admits evidence, a party, on the record:

**(A)** timely objects or moves to strike; and

**(B)** states the specific ground, unless it was apparent from the context; or

**(2)** if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

**(b) Not Needing to Renew an Objection.** When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.

**(c) Court's Statement About the Ruling; Directing an Offer of Proof.** The court must allow a party to make an offer of proof outside the jury's presence as soon as practicable--and before the court reads its charge to the jury. The court may make any statement about the character or form of the evidence, the objection made, and the ruling. At a party's request, the court must direct that an offer of proof be made in question-and-answer form. Or the court may do so on its own.

**(d) Preventing the Jury from Hearing Inadmissible Evidence.** To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.

**(e) Taking Notice of Fundamental Error in Criminal Cases.** In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved.

## Credits

Eff. March 1, 1998. Amended by orders of Supreme Court March 10, 2015 and Court of Criminal Appeals March 12, 2015, eff. April 1, 2015.

## Editors' Notes

### NOTES AND COMMENTS

**Comment to 1998 change:** The exception to the requirement of an offer of proof for matters that were apparent from the context within which questions were asked, found in paragraph (a)(2), is now applicable to civil as well as criminal cases.

# TAB 14

## 43.2. Types of Judgment

Currentness

The court of appeals may:

(a) affirm the trial court's judgment in whole or in part;

(b) modify the trial court's judgment and affirm it as modified;

(c) reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;

(d) reverse the trial court's judgment and remand the case for further proceedings;

(e) vacate the trial court's judgment and dismiss the case; or

(f) dismiss the appeal.

**Credits**

Eff. Sept. 1, 1997.

TAB 15

## 43.4. Judgment for Costs in Civil Cases

Currentness

In a civil case, the court of appeal's judgment should award to the prevailing party the appellate costs--including preparation costs for the clerk's record and the reporter's record--that were incurred by that party. But the court of appeals may tax costs otherwise as required by law or for good cause.

**Credits**

Eff. Sept. 1, 1997.